Tiede vs. Schneidt.

TIEDE, Appellant, vs. SCHNEIDT, imp., Respondent.

*March 3—April 12, 1898.*

99  201|
L103 443|
99  201|
s105 476|

*Injunction, dissolution of: Hearing on motion.*

1. A motion to dissolve a preliminary injunction and require the plaintiff to furnish additional security may, in the discretion of the court, be brought to a hearing without waiting to enable the plaintiff to· procure an affidavit to be used only on the question of the sufficiency of the security, where it appears that he will not be prejudiced thereby.

2. Where in an action against the owner of an establishment for converting dead animals into marketable products, and a city with which he had contracted to dispose of all dead animals found in its streets, to enjoin the operation of said establishment as being a nuisance, the equities of the complaint were fully met and denied by the answer of such owner, a motion to dissolve a preliminary injunction was properly, in·the discretion of the court, heard and decided without waiting for the city to answer.

3. The fact that the application for the injunction was supported by nine affidavits did not render it an abuse of discretion to dissolve the injunction, where there were numerous affidavits on the other side.

4. A court of equity will not lend its aid to prevent an illegal act, such as the violation of sec. 1418, R. S. 1878, prohibiting the keeping of slaughter houses upon the banks of any running stream, or depositing therein any dead animal, etc., merely because it is an illegal act, where no injury to property or property rights is alleged.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

Action against the defendants for maintaining an establishment and manufactory alleged to be a nuisance, in which

dead animals and the carcasses and offal therefrom were collected and converted into marketable products, located on the banks of the Menomonee river, in the town of Wauwatosa, upon a lot of land described in the complaint, containing about eight acres, of which the plaintiff claimed that he had been at all times in possession for the past three years, and was the owner thereof, known as lot 11 in block 1, and upon which his dwelling house is located, wherein he resides and has resided during said period.

It is charged that since August 26, 1897, the defendants had maintained, and were still maintaining, said establishment upon the banks of the Menomonee river, and from that time until the present had continually and daily caused cattle, horses, and other animals to be brought upon said premises, and there killed, and other animals already dead to be brought there, and had daily and continually converted the same in said manufactory into marketable products, and had caused the blood and offal from said animals to be thrown and deposited into the waters of the Menomonee river, which flows past and across the premises aforesaid, opposite to and in the neighborhood of the premises of the plaintiff; that, by reason of the establishment and maintenance of the said manufactory, the same had become a nuisance to the public and all persons residing in the neighborhood or traveling upon the public streets, and that the plaintiff had during said period, and was still, suffering private and special injury therefrom, peculiar to himself, in the impregnation of the air upon and in the neighborhood of his said premises, caused and coming from the putrid substances of the said dead animals, etc., so collected and converted by defendants in said establishment and manufactory, whereby the occupation of his property had been rendered disagreeable, unwholesome, and offensive; that odors from said manufactory, and from the causes aforesaid, kept the air upon the plaintiff's premises constantly impregnated

with foul and unhealthy vapors and smells, so that his said property has become impaired and unfit for use and occupancy, to his great and irreparable damage; that the blood and offal from said dead animals were continually deposited through an open sewer from said manufactory into the waters of the said river, which were thereby polluted and rendered unwholesome and unfit for use, either for watering stock or for any domestic purpose; that said injury was continuous and constantly recurring; and that he was without remedy at law in the premises, in that it was not susceptible of adequate compensation in damages; that said river is a running stream, flowing through the city of Wauwatosa and the city of Milwaukee, in said county, and also through the town of Wauwatosa, in said county, which is an organized town, containing more than 200 inhabitants, constituting a part of the county of Milwaukee, and which county contains a population of over 100,000 people.

Plaintiff prayed that said manufactory of the defendants be adjudged to be a private nuisance to the plaintiff, and that he might recover from the defendants the damages which he had sustained by reason of the maintenance thereof, and that the court adjudge and direct that the said nuisance be abated and removed as provided by law, and in the meantime, and until the final hearing, a temporary injunction might be granted restraining the defendants, their agents, servants, etc., from maintaining said or any establishment or manufactory in which dead animals, or the carcasses and offal therefrom, are collected and converted by them, or either of them, into marketable products or otherwise, and from depositing any such carcasses or parts thereof or blood therefrom in the Menomonee river, whether the same consists of carcasses, offal, or blood of cattle, horses, sheep, or other animals, and such further and other relief, etc.

Upon the verified complaint of the plaintiff, a temporary injunction, in substance as above, was granted until the further order of the court in the premises.

Tiede vs. Schneidt.

The defendant *Schneidt* answered, admitting the owner-ship of the eight acres of land mentioned in the complaint, and alleged that he had maintained and operated for more than twenty-one years before the commencement of the action an establishment and manufactory for the purpose of and in which hair is and had at all said times been treated and manufactured substantially in the way and with sub-stantially the same results upon the atmosphere as had been the case from the 26th of August, 1897, and claimed the right so to do peaceably, continuously, and without interruption or opposition; that during said time he had maintained and operated an establishment for the purpose of rendering dead animals, and converting their substance into a merchantable product, in the same way and with the same results upon the atmosphere as had been the case since the 26th of Au-gust, 1897; and during said twenty-one years he had on an average rendered daily one or more dead horses and other dead animals, and for that purpose he had carefully devised and caused to be constructed and put in place in his factory on said premises, an apparatus for reducing such carcasses in a sanitary and inoffensive manner, and otherwise made and constructed the necessary equipments for so carrying on said business; that, shortly prior to said 26th of August, the de-fendant the city of Milwaukee desired to contract with him for the disposal of dead animals to be found in the streets and other places in the city, and theretofore the carcasses of such animals had been rendered and disposed of by a corpo-ration known as the Wisconsin Rendering Company, under a contract with the city, which expired during the summer of 1897; that it was absolutely necessary for the public health that said carcasses be promptly removed and disposed of, and thereupon the said city of Milwaukee and the defendant *Schneidt* made a contract whereby they were to be taken to his establishment, and he was to render and dispose of the same in a sanitary manner; and thenceforward, from the 26th day of August, 1897, he received from the defendant

the city of Milwaukee said carcasses, and disposed of them by means of the appliances and apparatus theretofore used by him, and in the same manner, so that all the organic matter from said carcasses was reduced to substances absolutely innoxious and inoffensive; that at all the time the work of reducing the same had been, and was at the time of the service of the injunction, carried on in steam-tight metal tanks, by means of live steam, and under steam pressure; and that no gas or effluvium then did or could escape from said carcasses or tanks during or after the said process of reduction; and that, save as above stated, there had been no collection or conversion or rendering or reducing of any carcasses or parts thereof upon the said premises since August 1, 1897.

The defendant *Schneidt* also denied that he had at any time since August 1, 1897, killed or caused to be killed any cattle, horses, etc., or that he had maintained or maintains any slaughter house upon said premises, but alleged that during said time no cattle, horses, sheep, or other animals whatever had been killed upon said premises, save and except two horses, which were killed by the officers of the health department of the city of Milwaukee, by being shot to death. He also denied that said manufactory had become or was a nuisance either to the public or any person residing on or being in its neighborhood, or that any offensive odor or noxious gas or effluvium had ever passed from his said premises into or upon the premises occupied by the plaintiff, or that any blood or offal whatever from dead animals or from said establishment had been deposited through a sewer or in any other way into the waters of the said river, or that the same were or are in any way polluted or rendered unwholesome or unfit for use by reason of any substance or substances coming into the same in any way from the said premises of the defendant *Schneidt.* The defendant admitted that the Menomonee river, at the point named, is a

Tiede vs. Schneidt.

small stream, sluggish in its movements when the water is low, as it is during most seasons of the year; that it flows through the city of Wauwatosa, and through part of the city of Milwaukee, and through the town of Wauwatosa, which is an organized town, containing more than 200 inhabitants, constituting a part of the county of Milwaukee, which county contains a population of over 100,000 people; and denied every allegation of the complaint save only such as had been expressly admitted.

It was alleged in the answer that the action was not brought or maintained by the plaintiff at his own instance or in his own behalf, but was brought and maintained for the benefit and at the expense of persons who had no interest in the questions raised in the suit, and that the plaintiff was an engineer in the employ of one Manegold, who was the maintainer of the action, and paid the expenses thereof for his own purposes or the purposes of persons other than the plaintiff, and brought the same at the instance and by the command of said Manegold, who was acting in the interest and on behalf of and as the agent of the Wisconsin Rendering Company, for the purpose of preventing the defendant from reducing such carcasses, to the end that the said city of Milwaukee might be compelled either to allow said carcasses to rot in its streets, or to renew its contract, or to make a new contract for the reduction of the same with the said rendering company.

Upon said verified answer and over thirty affidavits and all the papers and documents in the action, a motion was made to vacate the injunctional order, and require the plaintiff to give additional security as the court might deem just. These affidavits were in general to the effect that the business so conducted and carried on upon said premises was conducted at all times in a sanitary manner, and by means of an apparatus for that purpose, by which the reduction thereof was rendered inoffensive, and the process was elab-

Tiede vs. Schneidt.

orately described. And it was alleged that no animal matter during any of the said time had passed from said premises of the defendant into the river, and that no smell whatever had at any time come from the said river at the point where the sewer enters the same, or below that point, by reason of any discharge through the sewer mentioned; that at all times all the blood, etc., coming from said carcasses had been carefully collected, with the contents of the viscera therefrom, and had been caused by the defendant to be buried; and it was maintained that it was absolutely necessary for the health of the city that the carcasses of all animals within its limits should in some way be disposed of, so as to be rendered innoxious, and that the continuance of the injunction entailed upon the defendant a loss of income of at least $50 to $100 per day; that at no time since the 26th of August, 1897, had any offensive smell been produced by the defendant's premises, and gone beyond the limits thereof, through or on account of the treatment or handling of the said animals.

These affidavits were also supported and confirmed by affidavits, to the number of six or more, of various physicians then and for a long time past assistants to the commissioner of health of Milwaukee, and inspectors of the health department, who had visited and examined said defendant's premises, and who deposed that, in their judgment, the said establishment and premises of the defendant were in a sanitary condition, and that no noisome or noxious vapors or injurious substances proceeded therefrom or were cast upon the neighboring premises, and that outside of the building of defendant no unwholesome or unpleasant odors were discernible or could be detected along the line of said sewer, and that no decomposing or offensive substances flowed into or were deposited in the said Menomonee river from said establishment, and no offensive odors arise from said river at said point or from the banks of the same in said neighbor-

hood. In these affidavits the manner of disposal of said carcasses of dead animals was described and explained, and they were supported by the affidavits of twenty-six other deponents, who live adjacent to or in the immediate neighborhood of said establishment, to the effect that they had not since the 26th of August, 1897, smelled any bad odor or smell coming from said plant.

When the motion to vacate the injunction came on to be heard, the plaintiff moved to postpone the hearing until he could have the opportunity to take the deposition of the defendant *Schneidt* as an adverse party, to be used on the hearing of said application, and the motion to require the plaintiff to give additional security thereon; but plaintiff's counsel stated that he did not desire to use said examination on the question of the existence of a nuisance, but on the question merely whether the security given by the plaintiff on the injunction should be increased. The court ruled, in substance, that if, after argument, it should be advised that the preliminary injunction should be retained, the remainder of the motion would be continued, so that the plaintiff might use the examination of the defendant upon that branch of the case. The application to vacate the injunctional order was forced to a hearing and argued, and the court made an order vacating and dissolving the temporary injunction, from which the plaintiff appealed.

For the appellant there was a brief by *N. S. Murphey*, attorney, and *Wheeler & Perry*, of counsel, and oral argument by *N. S. Murphey*. They contended, *inter alia*, that the temporary injunction could not properly be dissolved until all of the defendants implicated in the wrong had answered. 2 High, Injunctions, § 1528; 1 Barb. Ch. Pr. 639; *Noble v. Wilson*, 1 Paige, 164; *Vandervoort v. Williams*, 1 Clark (N. Y.), 377; *Jones v. Magill*, 1 Bland (Md.), 190; *Smith v. Loomis*, 5 N. J. Eq. 60; *Johnston v. Alexander*, 6 Ark. 302; *Prickett v. Tuller*, 29 N. J. Eq. 154. The affida-

Tiede vs. Schneidt.

vit of one disinterested witness in support of the complaint will prevent a dissolution. Here there were nine affidavits. 1 Barb. Ch. Pr. 47; *Manchester v. Day*, 6 Paige, 295; 2 High, Injunctions, §§ 1509, 1512. The acts being prohibited by sec. 1418, R. S. 1878, without regard to their effect, otherwise than that they are illegal, followed by irreparable damage and destruction of a common right, themselves furnish complete authority for a court of equity to restrain their execution. 2 High, Injunctions, § 1236; *Christopher v. New York*, 13 Barb. 567; *Hays v. Jones*, 27 Ohio St. 218; *Davis v. Zimmerman*, 91 Hun, 489.

For the respondent there was a brief by *V. W. Seeley*, attorney, and *Charles Quarles*, of counsel, and oral argument by *Mr. Quarles*.

PINNEY, J.    It is well settled that an interlocutory injunction is liable to be dissolved upon sufficient cause shown at any stage of the proceedings after the coming in of the answer.    "And, in general, it may be said to rest in the sound discretion of the court to dissolve such an injunction upon the coming in of the answer denying the equities of the bill, or to continue it to a hearing upon the merits, if such a course shall seem best calculated to serve the ends of justice, and to protect the rights of all parties.    A dissolution of an injunction after answer filed being, therefore, largely a matter of judicial discretion, appellate courts are averse to interfering with the exercise of such discretion."    In some of the states it has been broadly laid down that an interlocutory or preliminary injunction may be dissolved at any stage of the cause, either before or after answer filed, or after demurrer to the bill; while in others the rule prevails that a motion to dissolve will not be entertained until after the coming in of the answer,— founded upon the ground, doubtless, that the plaintiff is entitled to the discovery which the answer may afford in support of the equity of the bill. High,

Injunctions, §§ 1467, 1468. Accordingly, where a bill of discovery also prays an injunction against a judgment at law, if the bill contains no allegations sufficient to entitle the complainant to a discovery, and no ground upon which the injunction can be sustained, a dissolution may be had upon motion without the answer of the party from whom the discovery is sought.

In the present case it is objected that it was error for the court to entertain and grant, as it did, the motion to vacate the injunction before the defendant city had answered. Like objection is made that the court erroneously compelled the plaintiff to go to the hearing of the motion to dissolve before the plaintiff could examine the defendant *Schneidt* as an adverse party, so that his examination could be used upon the hearing of the motion; but as the plaintiff's counsel stated that he did not desire to use such examination on the question of nuisance or no nuisance, but on the question merely whether the security given by the plaintiff on the injunction should be increased, the court required the hearing on the motion to proceed; stating that, if of opinion that the injunction should be retained, plaintiff might thereafter use such examination of the defendant *Schneidt* on the matter of the sufficiency of the security. This was a proper exercise of discretion, and there is nothing to show that the plaintiff was injured by it, or by having the motion to vacate heard before the defendant city had answered. The formal answer of the city under its corporate seal would be of little or no avail as a matter of discovery, and the answer of the defendant *Schneidt*, the only natural person defendant, is quite full, and seems to cover the entire case. We cannot see that the plaintiff has been prejudiced in the least by bringing to a hearing the motion to dissolve the injunction before the defendant city had answered.

The authorities show that whether a motion to vacate an injunction may be heard before every defendant has an-

Tiede vs. Schneidt.

swered is largely a matter of discretion, and that there is, in fact, no absolute and inflexible rule on the subject. Much depends upon the circumstances and the interest of the defendant who has not answered, and his relation to the controversy. *Minturn v. Seymour,* 4 Johns. Ch. 173; *Jones v. Commercial Bank,* 5 How. (Miss.), 43; *Rogers v. Tennant,* 45 Cal. 184; High, Injunctions, § 1468. It appears to be well settled that the injunction may be dissolved at any stage in the progress of the cause, either before the filing of the answer or afterwards, or after demurrer. It is largely a matter of judicial discretion, and, unless it appears that the discretion of the court has been abused, the action of the court will be sustained. In *Walker v. Backus Heating Co.* 97 Wis. 160, the rule in this state is stated thus: "The order which grants or dissolves an interlocutory injunction is a discretionary order, and will not be disturbed on appeal unless it shall appear to be an abuse of judicial discretion. It is a well settled rule of general application that when all the material allegations upon which the equities of the case rest are fully met and denied, without evasion or equivocation, by the answer or the affidavits upon which the motion to dissolve is based, the injunction will be dissolved. High, Injunctions, § 1505. It is necessary that such facts only as constitute the equity of the case be so denied. The motion may be based upon the sworn answer alone, or upon affidavits, or upon both the answer and affidavits. R. S. 1878, sec. 2781. On such motion the court must decide, upon the facts presented, whether the injunction should have been granted, and, in case of doubt, give the defendant the benefit of that doubt."

The action was brought to obtain a perpetual injunction against the defendants for the maintenance of a public nuisance, alleged to be especially injurious to the plaintiff. The entire equity of the case depends upon the question of nuisance. It is contended by the plaintiff that, as there were

nine affidavits on the part of the plaintiff supporting the allegations of the complaint, this fact should have prevented a dissolution, notwithstanding the showing made by the affidavits presented in support of the motion. This position is in direct conflict with *Walker v. Backus Heating Co.*, *supra*, and with the statute (R. S. 1878, sec. 2781), by which it is provided that the application to vacate or modify an injunction "may be made upon the papers on which the injunction was granted, or upon proofs, by affidavits or otherwise, on the part of the moving party. If the application be upon such proofs, but not otherwise, the opposite party may oppose the same by like proofs, in addition to those on which the injunction was granted." The parties in the present case respectively availed themselves fully of their right to produce affidavits for and against the motion. These affidavits consisted largely of matters of opinion in respect to whether the establishment maintained by the defendant *Schneidt* was a nuisance or not; but, whether of opinion or of fact, whatever was affirmed by the affidavits on one side was as certainly contradicted or refuted by the affidavits produced on the other. The practice of trying equity cases on the merits upon *ex parte* affidavits is certainly to be deprecated; but the only limit, under the statute, that seems to exist to the number of affidavits that may be produced in support of or in opposition to a motion to vacate an injunction, consists in the discretion of the court hearing the motion. As stated in the cases cited, whether the injunction ought to have been vacated or retained was a matter depending upon the sound discretion of the court; and, as it cannot be affirmed that such discretion in the present instance has been abused, the order vacating the injunction must therefore be affirmed, and the parties required to settle the question of nuisance by a more satisfactory method of a regular trial upon testimony given by witnesses in open court.

The plaintiff invokes the provisions of R. S. 1878, sec. 1418, in relation to the erection, maintenance, and removal of slaughter houses, providing that: "No person shall erect, maintain or keep any slaughter house upon the bank of any river, running stream or creek, or throw or deposit in such running stream any dead animal or any part thereof or any of the carcasses or offal therefrom into or upon the banks of any such river, stream or creek, which shall flow through any city or village, or erect, maintain or use any building for a slaughter house, within the limits of any village incorporated or unincorporated, or any organized town containing two hundred or more inhabitants, or at any place within one eighth of a mile of any dwelling house or building used as a place of business; and every person who shall violate any of the provisions of this section shall forfeit for each such violation not less than ten nor more than one hundred dollars; and the mayor of the city, president of the village, and the chairman of the town in which any such slaughter house is located, shall have power to, and shall cause the same to be immediately removed; and every such officer who shall knowingly permit any slaughter house to be used or maintained, contrary to the provisions of this section, shall forfeit not less than fifteen, nor more than fifty dollars. In any county containing a population of one hundred thousand or over, all the provisions of this section in relation to slaughter houses shall apply to all establishments and manufactories in which dead animals or any part thereof or any of the carcasses or offal therefrom are collected and converted into marketable products."

Whatever criticism may be made as to the validity of this statute, it is a sufficient answer to its application to the present case to remark that it is no part of the jurisdiction of a court of equity to enforce by injunction the criminal or penal statutes of the state, nor will it interfere for the prevention of an illegal act merely because it is illegal. In the absence

of any injury to property or property rights, it will not lend its aid by injunction to restrain the violation of public or penal statutes, or the commission of immoral or illegal acts. High, Injunctions, § 20. Whether the acts complained of are followed by such consequences as to render them an actionable nuisance is the real question, in any event, whether forbidden by penal statute or not. Whether wrong and damages to the plaintiff so concur, under the circumstances stated, as to show a nuisance especially injurious to the plaintiff, which should be restrained, was the real question. Upon that question, the court, in the exercise of its undoubted discretion, found against the plaintiff, and vacated the injunction granted by the court commissioner.

In view of the facts presented by the record and the showing made, we cannot say that there was an abuse of judicial discretion, warranting the interference of this court on appeal from the order vacating the injunction.

*By the Court.*— The order vacating the injunction, appealed from, is affirmed.