DUNN, Appellant, vs. ACME AUTO & GARAGE COMPANY and others, Respondents.

*October 9—November 6, 1918.*

*Appealable orders: Injunction: Preserving status quo: Judicial discretion: Corporations: Accounting: Sale of treasury stock: Right of stockholder to acquire his proportionate share: Waiver: Duty of directors: Corporate books: Examination.*

1. An order of the circuit court continuing, but modifying, a temporary restraining order made by a court commissioner, is appealable under sec. 3069, Stats.

2. Where, upon an application for an order preserving the *status quo* pending the final result of an action, the papers show a reasonable probability of plaintiff's ultimate success, it is well nigh an imperative duty of the court to grant such relief, even though there is a direct conflict between the complaint and its supporting affidavits and the answer and affidavits on defendant's behalf.

3. In an action by a stockholder against a corporation for an accounting, the refusal to grant a temporary injunction preserving the *status quo* by restraining the sale of certain treasury stock was not justified by a claim, unsupported by the facts, that such sale was necessary to, and would, enable the company to become legally incorporated; nor was such refusal justified by the claim that the sale was necessary because of the indebtedness of the company, the amount for which the stock was in fact sold being so small as compared with the indebtedness that it could not affect materially the company's financial standing.

4. Where a corporation has purchased, retired, canceled, and placed in its treasury shares of its own stock it has thereby decreased its outstanding capital stock; and such shares cannot thereafter be sold and reissued without first giving to all the existing stockholders an opportunity to take their proportionate shares thereof.

5. If shares of its own stock purchased by a corporation have been treated as still outstanding, being carried upon its books as a liability, and have also been treated as an asset of the corporation, a different question is presented; but in any event the directors can dispose of such shares only in the honest exercise of their discretion, acting with the utmost good faith for the benefit of all stockholders, and not so as to give one faction or group of stockholders a benefit or advantage over another.

Dunn v. Acme A. & G. Co. 168 Wis. 128.

6. The right of a stockholder to acquire his proportionate share of a reissue of stock which had been purchased and retired by the corporation is not a mere privilege which is waived by his failure to offer to purchase the stock or attempt to bid therefor when it is offered for sale to the highest bidder; and especially is this so where the books of the corporation are so incomplete and fragmentary that the real value of the stock cannot be ascertained.

7. It is the duty of the directors to protect a stockholder in his right to acquire a proportionate share of an increase in the capital stock of the corporation, and to offer him such share at a fixed price. Ordinarily the existing stockholders cannot be compelled to pay a bonus.

8. The statutory right of the stockholder to examine the corporate books imposes upon the corporation not only the duty of keeping such books open for inspection at all reasonable times, but also the duty of keeping its stock subscriptions and accounts in such form that they may be examined and the condition of the corporate affairs ascertained therefrom.

9. Under the circumstances disclosed in this action for a corporate accounting the *status quo* with respect to certain treasury stock should have been preserved, and an order authorizing the directors to sell such stock without recognizing or protecting plaintiff's right to preserve his proportionate interest in the corporation is *held* an abuse of judicial power.

APPEAL from orders of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Equitable action for an accounting and other relief.

The plaintiff and the persons named as defendants were all of the stockholders of the defendant company, each of the stockholders being the owner of fifty shares of the capital stock of the par value of $10 a share. The plaintiff at one time was an officer and director of the company, but some time previous to the commencement of this action had ceased to be such, and differences had arisen between plaintiff and the defendant stockholders. The summons in this action was served December 16, 1916. On January 11 and 12, 1917, the defendants *Kettler, Hill,* and *Goodell* were examined adversely. It appears that prior to the commencement of the action the plaintiff had made some attempt to examine the books of the company, but had found the same

so incomplete and fragmentary that an accountant hired found it impossible to ascertain with any definiteness the amount of business done by the company or its assets and liabilities.    In January, 1918, the defendant stockholders, who constituted the board of directors, declared an eighty per cent. dividend upon the capital stock of the company.    The capital stock of the company was $10,000, divided into 1,000 shares of $10 each.    Of this 462½ shares had been issued, but some time between the organization of the company in 1911 and the commencement of this action 162½ shares had been repurchased by the corporation from its then owners.    In the month of January, 1918, the defendant stockholders, acting as a board of directors of the defendant company, determined to sell 162½ shares of the capital stock of the company then in its treasury.    Thereupon the plaintiff, on March 18, 1918, prepared and served his verified complaint, and upon the verified complaint, supporting affidavits, and the matter elicited by the adverse examination of the defendants *Kettler, Hill,* and *Goodell* obtained an order requiring the defendants to show cause why a temporary injunction should not be granted restraining the defendants from selling any of the capital stock of said corporation then in its treasury until a hearing on the motion and further order of the court, the order to show cause and a restraining order being signed by a court commissioner on March 18, 1918.    The defendants then procured an order returnable on April 5th, requiring the plaintiff to show cause why the temporary injunction should not be modified and why the sale of the 162½ shares should not be authorized, and on the hearing thereof on April 5th it was ordered (the two motions being heard together) that plaintiff's motion for a temporary injunction as to the 162½ shares be denied, and that the defendants be authorized, subject to confirmation by the court, to make sale at public auction of the 162½ shares, sometimes described as 6½ shares, and modifying the restraining order issued by the court commissioner.    Said order further reserved the ques-

Dunn v. Acme A. & G. Co. 168 Wis. 128.

tion of whether further sales of treasury stock should be made until the hearing on a motion to confirm the sale of the 162½ shares. On June 24, 1918, on motion made to confirm the sale of the 162½ shares to Adam Miller at $11.25 per share, an order was entered confirming the sale and directing the defendant company to issue and deliver the stock so sold to said Adam Miller. From the order denying plaintiff's motion for a temporary restraining order and authorizing the sale of the 162½ shares and from the order confirming the sale plaintiff appeals.

For the appellant there were briefs by *Brennan & Carthew* of Lancaster, attorneys, and *H. L. Butler* of Madison, of counsel, and oral argument by *Mr. Butler* and *Mr. B. H. Stebbins* of Madison.

For the respondents there was a brief by *R. A. Goodell* of Lancaster and *Kopp & Brunckhorst* of Platteville, and the cause was argued orally by *Mr. L. A. Brunckhorst* and *Mr. Goodell.*

ROSENBERRY, J. The first claim made is that the appeal should be dismissed for the reason that the order of April 5, 1918, is not appealable under sec. 3069, Stats., citing *Nash v. Meggett,* 89 Wis. 486, 61 N. W. 283.

The order of April 5, 1918, expressly continues the injunctional order issued by the court commissioner except as modified by the direction for sale subject to confirmation by the court. It seems clear that the order of March 18th was modified by the order of April 5th and is therefore within the provisions of sec. 3069, Stats., and appealable, it being an order which modifies an injunction. *Brock v. Dole,* 66 Wis. 142, 28 N. W. 334. It is further claimed that an order granting or refusing an injunction is one within the sound discretion of the court and that the action of the trial court in that respect will not be reversed unless so clearly wrong as to evince an abuse of judicial power. *Gowran v. Lennon,* 154 Wis. 566, 143 N. W. 678; *Tiede v. Schneidt,* 99 Wis. 201, 74 N. W. 798.

It is further claimed that upon this appeal this court is bound by the findings made by the trial court, citing *Conger v. Dingman*, 98 Wis. 417, 74 N. W. 125. The case cited is not authority for the proposition made. We think the rule is correctly stated in *Ekern v. McGovern*, 154 Wis. 157, 202, 142 N. W. 595, as follows:

"Where the papers on an application for an order preserving the *status quo* pending the final result of the case show a reasonable probability of plaintiff's ultimate success, it is well nigh an imperative duty of the court to grant such relief."

This is true notwithstanding there is a direct conflict between the complaint and the supporting affidavits and the answer and the affidavits on the part of the defendants. *Valley I. W. M. Co. v. Goodrick*, 103 Wis. 436, 445, 78 N. W. 1096.

The complaint alleges with great particularity that plaintiff has been deprived of all voice in the management of the affairs of the company; that the defendants as directors and officers have failed to perform their duties and honestly and fairly to administer the affairs of the corporation; that the assets of the corporation have been wrongfully diverted by the defendants to their own profit; that no proper books of account are kept; and that the business is mismanaged in many particulars therein stated. The verified complaint, although many of its allegations are upon information and belief, was supported by the adverse examination of three of the defendants and by the affidavits of disinterested persons as to some of the allegations. A strong *prima facie* showing was made. The allegations of the complaint were directly denied by answer and there are supporting affidavits on defendants' behalf. A showing was made which clearly entitled the plaintiff to a restraining order preserving the *status quo* until a trial and determination could be had unless some facts should clearly appear which made a change in the *status quo* necessary in order to preserve the

rights of all the parties and ultimately to do justice between them. The defendants attempted to meet this situation by the claim that the sale of the stock was necessary in order to allow the company to comply with the statutes so as to enable it to become legally incorporated, there being prior to the sale only thirty per cent. of the capital stock issued and outstanding. It is a complete answer to this claim to say that it does not appear that fifty per cent. of the capital stock is not subscribed and it does appear that twenty per cent. of the capital stock is subscribed and paid for, and further, that if a sale of enough capital stock is made so that the total amount issued and outstanding shall be fifty per cent., the sale of the 162½ shares is not sufficient to accomplish that purpose.

It is further claimed that the indebtedness of the company, which at the time of the sale amounted to about $11,000, it being $13,800 when the sale was authorized, required a sale of the company's stock. The stock sold brought to the treasury of the company $1,828.12. Five thousand dollars of the indebtedness owing was to the defendant stockholders. The application of the $1,828.12 certainly would not have much if any effect upon the financial standing of the company.

While a sale of treasury stock under some circumstances may be proper, there remains one consideration which seems to us controlling in the situation presented by this record, and that is that the court directed a disposal of the stock by a method which denied to the plaintiff his plain legal right to maintain his proportionate interest in the assets of the corporation.

It clearly appears from the complaint and supporting affidavits that it will be practically impossible to determine even approximately the value of the stock of this company until the matters set out in the complaint are fully litigated and the amount determined, if any, which the defendants shall be required to repay into the treasury of the company

on account of unlawful diversion of moneys and property belonging to the company.

In Luther v. C. J. Luther Co. 118 Wis. 112, 122, 94 N. W. 69, it was distinctly held that, "in an already established and going corporation, an increase of capital stock, accomplished either by formal increase of the amount originally authorized or by issue of what had originally been withheld, though within the authorized amount, without first giving opportunity to all existing stockholders to take their proportionate shares of such increase, is wholly beyond the power, not only of the directors, but of any mere majority of stockholders."

The question as to whether or not the rule should be applied in case of stock once issued but purchased and retired by the corporation itself was expressly reserved. While in the Luther Case a question of corporate control and management was involved, that is not the only consideration upon which the rule is founded. In the Luther Case it was said:

"While the ultimate purpose of most stock corporations is money profit, the right of proportionate voice and influence in selection of policy and method of accomplishing that result is most important to each shareholder. It is as fundamental and vital as the right of suffrage under a representative government. . . . Each holder of a share of stock has the right that, by convincing the holders of a certain number of other shares, his policy of business be followed. Any invasion of that right is an injury to him which, from his point of view, may be greater than very considerable present money loss to the corporation. While this right must yield to a power over it given by the terms of the association, still he has the right to insist that such power shall be exercised for the purposes of the whole association. It is not so when exercised for the direct purpose of depriving him of his proportionate voice and influence." Pages 123, 124.

The stockholder is given a right to his proportionate voice in the control of the company to protect his financial in-

terest.    Upon what grounds, then, can it be said that his financial interest should not be protected?

As was said in the *Luther Case,* the limitations upon the powers of directors in our corporations with reference to stock which has once issued and has been repurchased for the corporation must be considered with reference to sec. 1776, Stats., which provides: "The stock, property, affairs and business of every such stock corporation shall be under the care of and be managed by a board of directors," etc.

The Minnesota court in *Jones v. Morrison,* 31 Minn. 140, 16 N. W. 854, held under a similar statute that the rule did apply to stock once issued and repurchased by the corporation.    It is to be noted that capital stock authorized but never issued and increase of capital stock are embraced within the term "stock" as well as stock which has been issued but repurchased by the corporation for its own account.    If the rule applies in any case it should apply in all cases where the reason for the rule exists.

In this connection it is to be noted that in Wisconsin a corporation has power to purchase the shares of its own capital stock when such purchase is made for a legitimate and honest purpose and the rights of creditors do not suffer thereby.    *Gilchrist v. Highfield,* 140 Wis. 476, 123 N. W. 102.    Wisconsin corporations also have power to decrease their outstanding capital stock.    Secs. 1774 and 1755, Stats.

What is the effect, then, of a lawful purchase of its own capital stock by a corporation?    If retired, canceled, and placed in the treasury of the company and not reissued, manifestly its effect is to decrease the outstanding capital stock.    When the capital stock of the corporation has been decreased and it is proposed to reissue the repurchased stock, every reason for making such reissue proportionate to the holdings of the then stockholders exists that would exist if such increase were of stock not theretofore issued or an increase in the authorized capital.    The books of the defendant corporation were so imperfectly kept that it is very difficult

if not impossible to tell how the repurchase in this case was treated. Two of the defendant stockholders testified that the stock which was purchased had been placed in the treasury of the company. It appears from the affidavits that some of the stock was repurchased as much as two years prior to the making of the attempted sale under the order of the court. The defendant company has not made the statement required by sec. 1750, Stats. It seems fairly clear that the corporation did not treat the stock repurchased as a liability; in fact it did not appear on either side of its books. Under such circumstances, the corporation having lawfully purchased and then retired its own shares, and having statutory power to diminish its capital stock, it must be held that its outstanding capital stock is thereby diminished; particularly so in this case, as it appears that the purchase was made by the defendant directors for the purpose of quieting criticism as to the management of the company and the conduct of its affairs. It further appears that the company continued after the retirement of the stock to do a profitable business, and under such circumstances the rule that the directors of a corporation cannot authorize a sale or an increase of capital stock either by formally increasing the amount originally authorized or by issuing that which had originally been withheld, without first giving to all its existing stockholders an opportunity to take their proportionate share of such increase, applies to such proposed reissue, and the attempt of the directors to reissue such stock without first offering it to the then stockholders of the company was unlawful, and such sale should not have been authorized.

A different question would have been presented if the shares of its own stock purchased by the corporation had been carried upon its books as a liability and they had been treated as an asset of the corporation; but in any event the action of the directors would be subject to the rule that the directors could dispose of the same only in the honest exercise of their discretion, and that in such disposition they

were bound to act with the utmost good faith for the benefit of all stockholders and that it should not be disposed of so as to give one faction or group of stockholders a benefit or advantage over another. *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69.

It is claimed that because the plaintiff did not offer to purchase the stock or attempt to bid thereon he has waived his right to his proportionate share of the reissue. His claim to a proportionate share of the reissue is not a privilege but a right, and it is the duty of the directors to protect him in the enjoyment of that right and to offer him his proportionate share of the increase at a fixed price. In this case there appears to be no reason why it should be offered to present stockholders at a price above par. The authorized capital of the company is $10,000, of which only $3,000 is outstanding. Ordinarily the stockholders cannot be compelled to pay a bonus. *Hammond v. Edison I. Co.* 131 Mich. 79, 90 N. W. 1040; *Electric Co. v. Edison E. I. Co.* 200 Pa. St. 516, 50 Atl. 164. Assuming the allegations of the complaint to be true, it appears therefrom that neither the plaintiff nor any one else could ascertain the value of the stock, and to say that offering the stock for sale to the highest bidder protects him in the enjoyment of his right to acquire his proportionate share of the proposed reissue is practically a contradiction in terms. In order to protect himself he would be obliged to guess at a fair price, with as much, if not more, chance of guessing wrong as of guessing right. It has been held to the contrary in other jurisdictions. *Crosby v. Stratton,* 17 Colo. App. 212, 68 Pac. 130; *State ex rel. Page v. Smith,* 48 Vt. 266. In *State ex rel. Page v. Smith,* which is the leading case, the corporation had no power to decrease its capital stock, and treated the repurchased stock as outstanding and carried it on the books as an asset of the company, facts which clearly distinguish that case from this. In *Crosby v. Stratton* the question of whether the outstanding capital stock was diminished by the

'transfer to the company was not considered, and it appears in that case that the stock was transferred to the company for resale as a part of its general assets.

The record does not disclose any urgent necessity for the immediate sale of the stock of the defendant company. If the allegations of the complaint are true, it would be to the manifest disadvantage of the plaintiff, a minority stockholder, to be compelled to choose between losing his proportionate interest in the present assets of the company or subjecting further moneys to the management and control of a hostile and incompetent directorate. It appears from the record that it is practically impossible to ascertain from the books and memoranda of the company even approximately its present financial status. Those who claim the right and authority to manage and control the money and property of others ought to show themselves competent to keep an honest and fairly accurate account of their transactions. Minority stockholders have not many rights and the few they have should be safeguarded and vindicated. The statutory right of the stockholder to examine the books of the corporation imposes upon the corporation not only the duty of keeping such books open for inspection at all reasonable times, but also the duty of keeping its stock subscriptions and accounts in such form that they may be examined and the condition of the corporate affairs ascertained therefrom; otherwise the right of inspection is a barren legal right and of no value. *State ex rel. Quinn v. Thompson's M. F. Co.* 160 Wis. 671, 152 N. W. 458.

If the sale of the company's stock had been authorized so as to give to the plaintiff an opportunity of preserving his proportionate interest in the company, there might well be some doubt as to whether or not it would constitute an abuse of discretion, but we have no hesitancy in saying, under the circumstances disclosed in this case, that it is clearly the better administration to preserve the *status quo* until the allegations in the complaint can be inquired into and a de-

termination had with reference thereto; and in view of the fact that the order does not recognize or protect plaintiff's right to preserve his proportionate interest in the corporation, we must hold its issuance an abuse of judicial power.

In justice to the trial judge it should be said that it is claimed here that the question of the right of plaintiff to have his proportionate interest in the assets of the corporation preserved was not urged upon the attention of the court below. The question, however, is squarely presented by the record, fully argued here, and the interests of justice and a proper administration of the law require that it be now considered.

*By the Court.*—The order confirming the sale is reversed; so much of the order of April 5th as is appealed from is reversed, with directions that an order be entered setting aside the sale and continuing in force the temporary injunction preserving the *status quo;* and the cause is remanded for further proceedings according to law.