## HARVEY v. HARVEY et al.

## SOMERS et al. v. HARVEY.

(Circuit Court of Appeals, Seventh Circuit. May 3, 1923.)

Nos. 3188, 3193.

1. Removal of causes ⬅31—Joinder of corporation in suit to determine right to stock held not to prevent removal.

To a suit to determine rights in the stock of a corporation of the state of which complainant is a citizen, in which no rights of the corporation are involved, it is not an indispensable party, and its joinder for the purpose of enjoining it from permitting the stock to be voted in violation of complainant's rights will not prevent removal, to a federal court, where there is diversity of citizenship between complainant and the other defendants, between whom the only controversy exists.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Appeal and error $\Longleftrightarrow$71 (4)—Orders granting and refusing to dissolve preliminary injunction held appealable.**

Where before removal a state court had granted a restraining order, a subsequent order of the federal court, made after a hearing on evidence, granting a temporary injunction, modifying the order of the state court, and a later order refusing to dissolve the same, are appealable, under Judicial Code, § 129 (Comp. St. § 1121).

**3. Corporations $\Longleftrightarrow$65—Situs of property represented by stock certificates is in state of incorporation.**

The property represented by certificates of stock of a corporation has its situs in the state of the corporation, and the rule is not affected by a state statute providing the mode of transfer of certificates and that stock cannot be levied on except by actual seizure of the certificates.

**4. Courts $\Longleftrightarrow$269—Suit relating to ownership of corporate stock held a local "suit to enforce a legal or equitable claim to property."**

A suit to establish complainant's ownership of stock of a corporation, to remove a cloud on his title, and incidentally to restrain defendants from voting the same, is "one to enforce a legal or equitable claim to property" which may be maintained in the district of the corporation's domicile, and defendants, who are nonresidents, may be brought in by order of court, under Judicial Code, § 57 (Comp. St. § 1039).

**5. Injunction $\Longleftrightarrow$73—Pending suit to establish ownership of corporate stock, court may enjoin voting of stock.**

The power to vote stock is incidental to and is inseparable from ownership of the stock, in a suit to determine the ownership, though a suit in rem, and pending such determination the court may restrain all acts conflicting with the owner's rights, including the voting of the stock by defendants.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit in equity by A. J. Harvey against George A. Harvey, C. W. Somers, and others. From orders granting a preliminary injunction, and refusing to dissolve the same, defendants George A. Harvey and Somers and others separately appeal. Affirmed.

January 9, 1922, A. J. Harvey, plaintiff below and appellee here, filed in the Circuit Court of Milwaukee, Wis., his suit in equity against George A. Harvey, S. S. Harvey, C. W. Somers, George N. Sherwin, John Sherwin, A. V. Cannon, F. E. Baehr, George P. Steele, the First Trust & Savings Bank and the Union Trust Company as its successor, and Plankinton Arcade Company, alleging that the plaintiff is a resident of Milwaukee, Wis., that all of the individual defendants are residents of Ohio, that the First Trust & Savings Bank and the Union Trust Company are Ohio corporations, in Cleveland, Ohio, and that the Plankinton Arcade Company is a Wisconsin corporation, owning a long time leasehold of improved property in Milwaukee. The facts as set up in the bill are as follows:

The Plankinton Arcade Company's (hereinafter termed Company) property is incumbered by two trust deeds securing bond issue indebtedness of $600,000, issued December 1, 1915, and $250,000, issued April 1, 1916; the first issue of said bonds maturing, $30,000 on December 1, 1917 and an equal amount each year thereafter until December 1, 1927, when the entire remaining amount becomes due and payable, and the second issue of said bonds maturing the 1st day of April, 1928. The capital stock is $2,800,000 in common and preferred stock, in shares of $100 each. All except 900 shares of said stock has been issued. All stock is entitled to vote, and is owned in certain proportions by the plaintiff, the individual defendants, and certain other persons, Harvey brothers owning originally 7,066⅔ shares. On the 15th day of November, 1915, a stock deposit agreement was entered into between A. J. Harvey, George A. Harvey, A. V. Cannon, George P. Steele, George N. Sherwin, as trustees, and all stockholders of the Company, whereby the stockholders assigned and de-

posited with the trustees all issued certificates; the First Trust & Savings Bank of Cleveland, Ohio, being depositary. Each depositor received a certificate of deposit, reciting that the depositor would receive his stock upon payment of the first mortgage bonds or upon termination of the stock deposit agreement, if earlier. The exclusive title to all stock deposited, and all rights thereunder were by said agreement vested in the trustees.

Plaintiff and defendants S. S. Harvey and George A. Harvey were previously partners in Cleveland, Ohio. Plaintiff has removed to Milwaukee, and said copartnership has been dissolved, except as to those matters where a division of property interests has not been made. In 1919 said partners entered into an agreement whereby plaintiff and George A. Harvey each became owner of a one-half interest in all of the stock outstanding in the name of any or all of the partners in the Company. On December 14, 1920, the defendants Somers, Baehr, the Sherwins, Steele, and Cannon addressed a letter, in substance an agreement, to the first Trust & Savings Bank, reciting that they were holders of approximately 11,000 shares of stock, and stating that they had deposited said stock with said Trust Company, with a power of attorney to it or its nominees to vote said stock and transfer said stock to Harvey brothers if they should comply with said agreement, upon condition that said company might designate A. J. Harvey, S. S. Harvey, and George A. Harvey, jointly, to vote said stock, providing said Harveys should not be in default and that said stock should be held until April 1, 1928, at which time the bonds of the Plankinton Arcade Company should be paid, and upon such payment the certificates of stock should be assigned to said Harveys, or their order, provided the said Harveys, within 10 days from the signing of said agreement, should pay $120,000 of bonds, then in default, and all rents, taxes, and expenses of every kind, then due excepting only such part of the taxes of the year 1920 as might by the laws of Wisconsin be deferred for payment to August, 1921, and deposit with said Trust Company on or before January 31, 1921, and on or before the last day of every month thereafter, until said bonds should be paid, the sum of $25,000, which sum was to be used exclusively for the payment of current fixed charges of the Company and said Company's outstanding bonds according to the terms thereof. Should said Harveys at any time fail to deposit the said $25,000 and said default continue for 20 days, the said defendants had the right to terminate said agreement, in which event, if said sum should not be paid within 10 days, the Trust Company was to deliver said stock to said defendants. Each of the Harveys and said Trust Company assented to said agreement in writing.

Various allegations of fraud and conspiracy are set forth, many of which are not material in the present matter. Certain oral statements of George Harvey are alleged to have been false and to have been made with fraudulent intent. Plaintiff alleges that, relying upon said statements, he advanced for the Company $120,000, and received from it a mortgage securing same, subject, however, to the original trust deeds; that he has fully complied with said agreement; that defendant Geo. A. Harvey threatens to procure for himself a proxy to vote at the annual meeting on January 3, 1920, all of the common stock belonging to Harvey brothers and deprive the plaintiff of his management of the property; that the defendants George N. Sherwin, George P. Steele, A. V. Cannon, and S. S. Harvey have conspired with George A. Harvey; that in violation of said last-mentioned agreement the defendants, other than the Harveys, have issued and delivered to defendant George A. Harvey a power of attorney authorizing a majority of the three Harveys to vote said stock, and that said George A. Harvey and S. S. Harvey have threatened they would vote said stock to plaintiff's irreparable injury; that the other defendants are colluding and conspiring with the said Harveys to make such results possible; that at all stockholders' meetings, one of them having been called, the said George A. Harvey would carry into effect his threats, and would vote all of the stock of the Harvey brothers, and thereby irreparably injure the plaintiff and deprive him of his rights.

It is alleged, also, that George A. Harvey has caused to be transferred to himself and others certain shares of common stock. purchased by the brothers from Elmer G. Derr, and 520 shares of stock belonging to Harvey

brothers, in all of which plaintiff alleges that he has a one-half interest, and that by collusion with others George A. Harvey has procured a proxy to vote 850 other shares purchased and owned by the partners; that the defendants George Harvey, Steele, Cannon, John Sherwin, Baehr, and Somers have conspired to claim that plaintiff is in default and have declared a forfeiture; that all of the defendants except the Company have threatened to vote, or allow to be voted, said stock in violation of said agreement in said letter contained, and refuse to allow the plaintiff to have any power of attorney, proxy, or right to vote, jointly or otherwise, on the stock owned by him and his brothers, although under the agreement only a joint power of attorney could rightfully be issued to the Harvey brothers, and that a power of attorney or proxy authorizing a majority of the three Harvey brothers to vote said stock has been issued.

The bill prays that the original stock deposit agreement be adjudged void, and the agreement of December 14, 1920, in full force and effect; that the court decree that George A. Harvey has abandoned all his interest therein, and that the plaintiff has succeeded thereto; that the defendants G. A. Harvey, Steele, George N. Sherwin, and Cannon and their representatives be enjoined from voting any of the stock in which the plaintiff has any interest, either as a member of Harvey brothers, or as owner thereof, and that the defendants the Harveys, the Union Trust Company as successor to the First Trust & Savings Bank, Somers, the Sherwins, Cannon, Baehr, and Steele and their representatives be enjoined from voting or allowing to be voted any of the stock deposited under the agreement of December 14, 1920, otherwise than by joint power of attorney executed to A. J. Harvey, S. S. Harvey, and George A. Harvey, and that the defendant Plankinton Company be enjoined from accepting, receiving, or permitting to be used as votes at any stockholders' meeting any of the said stock mentioned.

Upon the filing of this bill, on January 5, 1922, the circuit court of Milwaukee county entered an order restraining the defendants as prayed in the bill. On January 23, 1922, George A. Harvey, by his separate petition, and he and S. S. Harvey, by their joint petition, caused the suit to be removed to the United States District Court for the Eastern District of Wisconsin. The plaintiff thereafter moved to remand the cause, and this motion the court denied. On March 14, 1922, the court entered an order continuing in force the order entered by the circuit court of Milwaukee county. Thereupon substituted service, under section 57 of the Judicial Act, was secured upon the remaining defendants, except the company, all of whom were residents of Ohio.

The court, on May 31, 1922, after hearing upon bill, affidavits, and motions, continued in full force the order of January 5, 1922, except that same was modified in certain particulars and added to in others. Thereafter the Ohio defendants, other than the Harveys, moved to set aside the service of the process upon them. This the court denied, and thereafter, on the 10th day of July, 1922, the same defendants moved to dissolve the order of the court, which motion the court denied.

The defendant George A. Harvey perfected his appeal from the order of May 31, 1922, and assigned as error the granting of the injunction in the original order. This case is No. 3188. The remaining defendants, other than S. S. Harvey, appealed from the order of July 15, 1922, denying the motion to dissolve the temporary injunction. This case is No. 3193. Both cases were presented and argued together.

It is contended by the defendants that the bill is without equity, that the court has no jurisdiction, for the reason that the defendants, other than the Plankinton Company, are nonresidents, and that the relief sought is personal relief and not relief in rem. The plaintiff moves to dismiss the appeal, on the ground that the orders of May 31 and July 15, 1922, are not orders granting or refusing to dissolve a temporary injunction, and on the ground that, the defendant Plankinton Company being a necessary party, there is no jurisdiction in the United States court.

In No. 3188:

Irving A. Fish, of Milwaukee, Wis., for appellant.

Francis McGovern, of Milwaukee, Wis., for appellees.

In No. 3193:

Jackson B. Kemper, of Milwaukee, Wis., for appellants.

Francis McGovern, of Milwaukee, Wis., for appellee.

Before EVANS and PAGE, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge (after stating the facts as above). [1] The motion to dismiss the appeals should be denied. All defendants except the Plankinton Arcade Company are citizens of the state of Ohio. That Company is a corporation organized under the laws of Wisconsin and the plaintiff resides in Wisconsin. But the Plankinton Company is not an indispensable party. The relief sought by the plaintiff is a decree adjudging the stock deposit agreement void, enjoining all the defendants other than the Company from voting any stock in which plaintiff is interested, and enjoining the Company from "accepting, receiving, or permitting to be used, votes upon any of the stock" of said Company, in which plaintiff has any interest, except in compliance with plaintiff's rights. The whole theory of plaintiff's bill is that the defendants other than the Company are conspiring to use his stock against his own interests. An injunction against the alleged conspirators will adequately protect him, and the granting of the relief prayed against the corporation will in no wise increase the efficacy of a decree in his favor against the other defendants. No misconduct or cause of action of any character is alleged against the Company, and its rights are not attacked or in any way involved in this controversy between stockholders residing in Wisconsin and those and their privies residing in Ohio. Plainly the Company is not an indispensable party defendant and a separable controversy exists between the plaintiff and the defendants other than it, and between the plaintiff and the defendant George A. Harvey. Consequently the suit was properly removed upon the petition of George A. Harvey, and that of him and S. S. Harvey, and the court below had jurisdiction of the suit. Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514. There the Supreme Court said:

"When the petition for removal was presented, there was in the suit, as framed by plaintiffs, a controversy wholly between citizens of different states; that is, between the plaintiffs, citizens, respectively, of Minnesota and Indiana, and the individual defendants, citizens of New York, Wisconsin, and Massachusetts. And since the presence of the land company is not essential to its full determination, the defendants, citizens of New York, Wisconsin, and Massachusetts, were entitled, by the express words of the statute, to have the suit removed to the federal court."

[2] Nor should the appeals be dismissed upon the ground that the orders of May 31, 1922, and July 15, 1922, are not orders granting or refusing to dissolve a temporary injunction, which are made appealable by paragraph 129 of the Judicial Code (Comp. St. § 1121). The orders were made after hearing. They added to the original temporary restraining order certain provisions, and took from the same certain others. From a perusal of the record it appears that the lower court after several hearings, and after considering fully the bill and affidavits, as well as the motions made and argument of counsel, deter-

mined what should be done with reference to the prayer for a temporary injunction, and entered a temporary injunction, which modified in certain particulars the original restraining order, which on May 31st had been standing since January 5th. The order of May 31st was, in its essence, an interlocutory injunction, and the order of July 15th was an order refusing to dissolve it. Root v. Mills, 168 Fed. 688, 94 C. C. A. 174 (C. C. A. 7th Cir.).

[3, 4] Appellants contend that the court below was without jurisdiction of the defendants residing in Ohio other than the Harveys, for the reason that the action of plaintiff is in personam, and the Ohio defendants other than the Harveys could not properly be brought into court by service under section 57 of the Judicial Code (Comp. St. § 1039). That act is as follows:

"That when in any suit commenced in any Circuit Court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be. * * *

"But said adjudication shall, as regards said absent defendant or defendants, without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

Though the bill of complaint is verbose, and contains immaterial and irrelevant allegations, as well as numerous conclusions of the pleader, and is lacking in the essentials of clear direct averments of fact necessary to proper pleading, the court, after a careful scrutiny and analysis of it and the affidavits, finds such averments of fact as to say that the crucial point of the plaintiff's case is that he claims that he owns certain shares of stock in the Plankinton Arcade Company, and an undivided interest in certain other shares, of which the defendants by an alleged illegal and fraudulent conspiracy are attempting to deprive him, or of dominion over which they are illegally and wrongfully depriving him, so that he is wrongfully prevented from voting same as his own stock, and that the defendant George A. Harvey is wrongfully in control of certain proxies therefor and threatens to vote same to the plaintiff's irreparable injury, and that the other defendants have issued an unwarranted power of attorney, giving a majority of Harvey brothers the right to vote all stock, and threaten to vote or give George A. Harvey a proxy to vote all of said stock wholly regardless of plaintiff's rights. The essence of plaintiff's suit is the establishment of his right to the stock and its control and to remove a cloud or incumbrance therefrom, and incidentally to restrain the defendants from illegal interference therewith by voting the same or otherwise. Such a suit is in its nature one in rem, affecting property located in Wisconsin, shares of stock in a Wisconsin corporation.

"The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of

the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner." Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647.

The appellants contend that in view of the fact that in Wisconsin the uniform stock transfer act is in force, and under its provisions shares of stock can be transferred only by indorsement or equivalent writing, and cannot be attached or levied upon until actually seized, the case is taken out of the rule announced, and that under a correct interpretation of the statute the state of Wisconsin has fixed the situs of shares of stock at the residence of their owner. It may be true that the statute mentioned tends to give to shares of stock qualities partaking of those of commercial paper, but we do not agree that the effect of the statute is to change the situs of the shares, or to deprive the courts of Wisconsin from exercising jurisdiction over stock in a Wisconsin corporation owned by nonresidents. The language of the Supreme Court quoted above indicates the reason for holding that their situs is that of the corporation; that is, that shares of stock represent units or undivided interests in the corporate property, and must therefore have their situs with that of the corporation. They are nothing more than evidence of the holder's title to a certain number of aliquot, undivided interests in the property and franchises of the corporation. The Wisconsin statute contains nothing irreconcilable with the proposition.

[5] Appellant's contention that the injunction granted relief in personam and therefore cannot be based upon service under section 57, which applies to actions in rem, is not well founded. This suit is in the nature of a suit to quiet title to personal property within jurisdiction of the court. The court has in its custody the res. It puts out its protecting hand and says to the defendants that the plaintiff claims the res; that pending the determination of that claim the statu quo shall be maintained and the defendants restrained from using the res; that if they desire to contest the claim of the plaintiff to this property they shall come into court and do so. Incidental to its jurisdiction over the res, the court may use its power of injunction, not to prevent distinctly personal acts by the defendants, disconnected with the res, but to prevent defendants interfering with, disposing of, converting, injuring, or wrongfully using the res. The power to vote the stock is incidental to and is inseparable from the ownership of the stock. Fletcher, Enc. Corp. § 1656; 14 Corpus Juris, 898, § 1383; Lord v. Equitable Life Assurance Society, 194 N. Y. 212, 87 N. E. 443, 22 L. R. A. (N. S.) 420; Bigelow v. Calumet & Hecla Mining Co. (C. C. A. 6th Cir.) 167 Fed. 721, 94 C. C. A. 13; Luther v. C. J. Luther Co., 118 Wis. 112, 123, 124, 94 N. W. 69, 99 Am. St. Rep. 977; Dunn v. Acme Auto & Garage Co., 168 Wis. 128, 134, 135, 169 N. W. 297. Consequently the court may determine the ownership, and, pending that determination, restrain all acts conflicting with the owner's muniments and incidents of ownership. Thus it may cancel contracts alleged to be fraudulent incumbrances upon plaintiff's title; it may enjoin the performance of contracts alleged to be illegal incumbrances upon plaintiff's title; it may, in short, make any order that is necessary to secure

to plaintiff the full enjoyment of his property within the court's juris-diction, by injunction or otherwise, if within the prayer of the bill. Hudson v. Murray (D. C.) 236 Fed. 419; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647; Leroy S. & C. v. McHarg, 42 S. D. 307, 174 N. W. 742; Holmes v. Camp, 219 N. Y. 359, 114 N. E. 841; Wait v. Kern, 157 Cal. 16, 106 Pac. 98; L. & N. R. Co. v. Western Union, 234 U. S. 369, 34 Sup. Ct. 810, 58 L. Ed. 1356. Courts of equity will take jurisdiction of such controversies to protect stockholders in their ownership, voting and other incidents of ownership. Villamil v. Hirsch (C. C.) 138 Fed. 690; Taylor v. Southern Pac. (C. C.) 122 Fed. 147; Wood v. Union, etc., Ass'n, 63 Wis. 9, 22 N. W. 756; Brown v. Pac. Mail Co. 5 Blatchf. 525, Fed. Cas. No. 2,025; Clarke v. Cent. Ry. Co. (C. C.) 50 Fed. 338. The court will restrain a transfer of stock and arrest a threatened injury. Even though plaintiff might have a legal remedy, that of equity is more bene-ficial and complete and will be extended. Osborn v. Bank of the U. S., 22 U. S. (9 Wheat.) 738, 6 L. Ed. 204.

These cases are appeals from the order granting a temporary in-junction and the order refusing to vacate or dissolve the same. The merits of the controversy between the parties are not before the court, except in so far as necessary to determine whether the plaintiff by his bill and affidavits has made out a case sufficient to sustain the tem-porary injunction granted. Therefore we refrain from any expression which might in any way prejudge the rights and obligations of the parties, except in so far as necessary to determine the exact point be-fore the court.

It may be true that the plaintiff is not entitled to a decree adjudging the stock deposit agreement of November 30, 1915, null and void, or to a decree finding that George A. Harvey has surrendered and aban-doned all of his interests in and to and under the agreement of De-cember 14, 1920. But, in view of the fact that the plaintiff avers that he is owner of many and part owner of many other shares of stock, and that he has fully complied with all of the provisions of the agree-ment of December 14, 1920; that he has paid all sums incumbent upon him to be paid under said agreement, and especially avers in one of his affidavits the payment of all sums mentioned in said agreement, and avers that the defendants in violation thereof have issued powers of attorney giving to a majority of the three Harveys the power to vote all of the stock deposited, including that in which the plaintiff holds a one-half interest and threaten to give George A. Harvey a proxy to vote the same, and that defendant George A. Harvey threatens to vote said shares under said power of attorney, or said proxy; and it ap-pears from the agreement of December 14, 1920, that no power of attorney for the voting of said stock, in which plaintiff is interested, can properly be issued except a joint power of attorney to the plain-tiff and George A. Harvey and S. S. Harvey, unless default has been made—the court is of the opinion that a prima facie case authorizing the injunction was made out. The plaintiff having expressly negatived any default on his part, the court cannot rightfully pass upon other questions involving the merits.

The injunction does not enjoin the defendants from voting stock of their own, but enjoins each of them from voting stock deposited in the name of Harvey brothers, and stock of which plaintiff is part owner, and from granting any power of attorney other than a joint one to A. J. Harvey, S. S. Harvey and George A. Harvey, jointly, and enjoins the defendants from voting any stock belonging to A. J. Harvey. In other words, it is an injunction against alleged fraudulent breach of the contract of December 14, 1920, and the only question before the court is whether or not such an alleged fraudulent act should be enjoined.

The orders of the court below will be affirmed, at the costs of the appellants.