LEVY, Appellant, vs. SATTLER and others, Respondents.

*March 6—May 27, 1919.*

*Corporations: Treasury stock: Sale: Right to purchase: Evidence.*

1. Where only part of the stock of a corporation was issued, a
   purchaser of stock already issued takes with it the resulting
   right to take his proportionate share of any stock subsequently
   issued; but if he merely purchases unissued stock, he has no
   right to participate in any issue of stock made before his
   agreement to purchase was carried out.
2. In an action by a purchaser of corporate stock to declare the
   total amount of unlawfully issued stock less than the amount
   on the books, the evidence is *held* to warrant a finding that
   plaintiff's purchase was of unissued treasury stock and not of
   stock already issued.

APPEALS from a judgment of the circuit court for Mil-
waukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

This is an action in equity brought by the plaintiff, the
owner of fifty shares of stock of $100 each in the *Milwaukee
Knitting Company* (a corporation), against the other stock-
holders to obtain a judgment declaring the total amount of
legally issued stock of the corporation to be 250 shares in-
stead of 430 shares (the amount actually issued), thus mak-
ing him the owner of one fifth of the capital stock, and to
obtain other incidental relief such as the formal cancellation
of the stock issued exceeding 250 shares, the setting aside of
the election of directors as well as the proceedings of the
acting board of directors, and the calling of a new meeting
of legal stockholders for the election of directors.

The fundamental undisputed facts are that the *Milwaukee
Knitting Company* in December, 1914, had an authorized
capital stock of $50,000 divided into 500 shares of $100
each, of which only 250 shares had been issued, owned as fol-
lows: the defendant *Sattler* 99 shares, the defendant *H. M.
Levy* 100 shares, the defendant *L. E. Trevett* 50 shares,
and one Idzal, son-in-law of *Sattler,* one share, and that the
plaintiff in August, 1916, orally agreed to purchase fifty

shares of stock of the defendants *Sattler* and *H. M. Levy,* .purchasing twenty-five shares of each respectively, but as a part of the same transaction. The share in the name of Idzal was in fact the property of *Sattler.*

The principal question in the case is whether these shares purchased by the plaintiff were part of the issued and paid-up stock, as claimed by plaintiff, or were shares to be issued out of the 250 shares still unissued and called treasury stock by the parties to this litigation.

It is claimed by the defendant *Sattler* and found by the court that prior to this sale of stock to the plaintiff the defendants *Sattler* and *H. M. Levy,* who were respectively president and secretary-treasurer of the corporation, agreed that they would purchase the entire 250 shares of unissued stock in equal shares. To this agreement *Trevett* was not a party, and nothing had been done under it prior to the sale of stock to the plaintiff. The court found that by the terms of the plaintiff's oral contract of purchase he was to receive from each of the defendants *Sattler* and *H. M. Levy* twenty-five shares of the stock subscribed for and *to be issued,* paying therefor $100 per share, and in addition a bonus to be later determined, the stock to be transferred upon payment of the purchase price and after distribution of accumulated surplus, dividends, and profits for the year ending December 31, 1916, and that as part of the same transaction the plaintiff agreed that he would give up his business at Duluth and enter the employ of the corporation. The court further found that about December 1, 1916, the plaintiff began to work for the corporation and left Milwaukee in that service early in January, 1917, not returning until March following, and that on December 12, 1916, *Sattler* and *H. M. Levy* each was credited on the books with $6,700, the credit being made up in each case of moneys theretofore advanced by him to the company, $2,000 salary theretofore voted for the year, and $1,916 being his share of the net profits and surplus for the year, and that on January

2, 1917, a debit of $6,700 "capital stock" was entered on each account, which amounted to payment for sixty-seven shares of the previously unissued stock.

Further findings of the court were to the effect that on January 6, 1917, it was agreed by the plaintiff and *Sattler* and *H. M. Levy* that the bonus to be paid by the plaintiff for his stock should be $900; that on January 24th the plaintiff paid $5,000 in cash for his fifty shares of stock directly to the corporation; that on February 15, 1917, *H. M. Levy* opened an account on the ledger denominated "A. J. Levy Capital Account," entering a debit charge thereon of $5,000 for fifty shares; that on January 6, 1917, the defendant *Sattler* made a written assignment of fifty shares of his stock to the defendant *Brin,* his son-in-law, which assignment was entered on the books of the corporation, and that immediately after this transfer a stockholders' meeting was duly held at which *Sattler, H. M. Levy, Trevett,* and *Brin* were elected directors of the corporation, and said *Brin* has since acted as such; that in March, 1917, plaintiff was informed of the subscriptions of *J. B. Sattler* and *H. M. Levy* for the un-issued $25,000 of stock and that there had been assigned to him fifty shares without any subscription rights attached thereto, and accepted said fifty shares as transferred to him on the books of the corporation, and that the plaintiff then became advised that *Brin* had been elected director and was assuming to act as such; that certificates of stock with stubs in accordance with the holdings and transfers hereinbefore set forth were made out and signed by *H. M. Levy* in June, 1917, but, although approved by the president, were never signed by him nor delivered, except that *Trevett* has received a certificate for his original fifty shares; that a directors' meeting was held in July, 1917, at which *Trevett* resigned as vice-president and *Brin* was unanimously elected to the office; that the defendants *J. B. Sattler* and *H. M. Levy* acted in good faith in said transactions and in good faith believed themselves entitled to subscribe for the additional shares of

stock which they took over and above the original $25,000 of full-paid stock held by them, but that *Trevett* had no knowledge of their action and never waived his right to participate in the subscription for stock unissued prior to January 1, 1917; and that in October, 1917, *Trevett,* learning of the subscriptions of *Sattler* and *H. M. Levy* for the unissued stock and their subsequent transactions, brought action for relief against them and the corporation, which action was settled by agreement between *Trevett* and the board of directors in December, 1917, in which he *(Trevett)* ratified the various transactions and was given the right to subscribe for forty-six of the remaining sixty-six unissued shares of stock.

The trial court concluded from these facts that *Sattler* and *H. M. Levy* lawfully own 167 shares each of the capital stock and are each entitled to subscribe for twenty-five additional shares of unissued stock; that the plaintiff on January 24, 1917, became the owner of fifty shares of the additional stock (over and above the 250 shares originally outstanding), and by his acts has estopped himself from claiming otherwise; that *Brin* has been since January 6, 1917, a director of the company; that *Trevett* is entitled to subscribe for forty-six additional shares of the unissued stock of the company in accordance with the agreement of settlement aforesaid; and that the complaint of the plaintiff should be dismissed.

The defendant *H. M. Levy* by answer interposed a cross-complaint against his codefendants, attacking the validity of the various transactions connected with the issuance of all shares of stock not included in the 250 shares originally issued, and asking that such transactions be set aside. This cross-complaint was also dismissed on the merits. The plaintiff and the defendant *H. M. Levy* both appeal.

For the appellant *Adolph Levy* there were briefs by *Flanders, Fawsett & Smart* of Milwaukee, and oral argument by *Edward M. Smart.*

For the respondents *Sattler, Brin,* and the *Milwaukee*

*Knitting Company* there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee; for the respondent *Trevett* a brief by *Charles F. Puls, Jr.,* of Milwaukee; and the cause was argued orally by *Nathan Glicksman.*

WINSLOW, C. J.    The evidence in the case is voluminous, and the briefs discuss many questions which we do not find it necessary to consider.    The fundamental question in the case is, in our judgment, a question of fact pure and simple, and that question is whether the agreement of August, 1916, between the plaintiff on one side and the defendants *Sattler* and *H. M. Levy* on the other was that said defendants would each sell to the plaintiff twenty-five shares out of the 250 shares which said defendants had already paid for, or twenty-five shares of the so-called treasury stock, not yet issued or paid for, but which said defendants had agreed between themselves to take.

There was, of course, a considerable difference between the character and value of the two propositions.    Under the first proposition the plaintiff would secure fifty out of 250 shares, or a one-fifth interest in the corporation, with the resulting right to take his proportionate share of any stock subsequently issued, thus preserving his voting power intact; under the second proposition he would simply acquire fifty shares of stock without the right to participate in any issues of stock made before his agreement of purchase was carried out.    *Luther v. C. J. Luther Co.* 118 Wis. 112, 94 N. W. 69; *Dunn v. Acme A. & G. Co.* 168 Wis. 128, 169 N. W. 297. Had a stock book been kept with stubs and certificates issued as stock was subscribed, there would probably be little difficulty in deciding the question, but this was not done, and the only record of stock transactions is contained in the capital and stockholders' accounts in the books of account.

The trial court very distinctly found, however, as we read the findings, that the agreement between the parties was that the plaintiff was to receive fifty shares of the unissued stock

still in the treasury and not any part of the original 250 shares which *Sattler* and *H. M. Levy* had paid for. A very ingenious argument was made by appellant's counsel to the effect that the findings should be construed as finding that the contract was to sell the latter class of stock, but it fails to convince us, especially in view of the conclusions of law reached by the court, which could not be justified if the facts were found as claimed by the appellant. The testimony in support of this finding was amply sufficient to sustain it; certainly it cannot be said that it is against the preponderance of the evidence. The initial conversation on the subject between *Sattler* and the plaintiff took place at Duluth, where the plaintiff was engaged in business, in the summer of 1916. *Sattler* testifies positively that he stated to the plaintiff that the total capitalization was $50,000, of which $25,000 was paid up; that he proposed to sell him twenty-five shares of the treasury stock, and that if his brother would also sell him twenty-five shares that would give him fifty shares; that no stock was to be turned over till after New Years, after inventory was taken and the amount earned on the paid-up stock ascertained, and that such bonus should be paid on the twenty-five shares sold when they were turned over in 1917; that there was $25,000 in the treasury, and that he had subscribed $12,500 of the treasury stock and *H. M. Levy* $12,500. Two apparently disinterested witnesses who were present during all or a part of the conversation corroborated *Sattler's* testimony quite satisfactorily. This conversation was preliminary only, and in pursuance of it the plaintiff came to Milwaukee and made the final oral arrangement August 16, 1916, at which time he saw and talked with both *Sattler* and his brother, *H. M. Levy*. *Sattler* testifies that at this time the plaintiff, after talking with his brother, distinctly stated that he accepted the proposition. The plaintiff and his brother testified in substance that a proposition was then made to the plaintiff that he buy twenty-five shares of stock from *Sattler* and a like amount

from his brother, *H. M. Levy,* at par, with a bonus based on profits declared for 1916, and to enter into service as a salesman December 1, 1916.    This in substance is the direct testimony on the subject.    It appears further, however, that when the plaintiff paid for his stock, January 24, 1917, the amount was paid directly into the treasury of the company and not to *Sattler* and *H. M. Levy* individually, as would naturally be the case if the stock purchased by the plaintiff was paid-up stock owned by them.    The entries on the books of account point rather to this view of the transaction than to the other, and we find that *H. M. Levy,* in a deposition taken under sec. 4096, Stats., before trial of the case, testified as follows with regard to the entries made by him on the books:

"*Q.* And in undertaking to make your brother a stockholder you caused to be transferred to him fifty shares of stock that had heretofore been unissued? *A.* Yes, sir. *Q.* And that was done, as your books show, upon the assumption that you and *Mr. Sattler* were entitled to all the stock that had been unissued? *A.* Yes, sir."

It will be remembered that prior to January 24, 1917, the defendants *Sattler* and *H. M. Levy* had, by charging up to themselves certain credits for salaries and advances, paid for 134 additional shares of stock, the same being divided equally between them.    The court expressly found that these shares of stock were paid for January 2, 1917, and also that the defendants acted in good faith in these various transactions, and we are unable to say that these findings are not supported by the evidence.    No certificates were in fact issued at the time, but of course *Sattler* and *H. M. Levy* owned the stock notwithstanding that fact.    In legal effect it was issued when fully paid for.    The certificate is simply evidence of the essential fact, not the fact itself.

There were therefore in existence at the time the plaintiff took his stock 434 shares of paid-up stock and none has been

Levy v. Sattler, 169 Wis. 308.

issued since. The plaintiff has precisely the same voting power now that he had when he took and paid for his stock.

It is true that the defendant *Trevett* had not been consulted with reference to the issuance of the additional stock to *Sattler* and *Levy* nor had he been offered an opportunity to take his share of the new issue, an opportunity to which he was entitled under the *Luther Case,* above cited. In this question, however, only *Mr. Trevett* himself was interested, and he has obtained a satisfactory adjustment of his claims by the agreement of settlement in the action brought by him, and thus the matter drops entirely out of consideration.

The court further found that in March, 1917, the plaintiff was fully informed of the subscription attempted to be made by *Sattler* and *H. M. Levy* for the unissued stock and that the fifty shares assigned and transferred to him had no subscription rights attached thereto, and with that knowledge assented to the transaction and accepted the shares transferred to him on the books of the corporation as the stock purchased by him. This finding is supported by sufficient evidence and seems entirely sufficient to fix the rights of the parties even if the terms of the original agreement were in doubt.

These conclusions really dispose of the case. The trial court having found on sufficient evidence that *Brin* became a stockholder on January 6, 1917, the objections raised by plaintiff to the legality of his election as director and vice-president practically disappear. No actual fraud or mismanagement of the affairs of the corporation is alleged, and the judgment must be affirmed.

*By the Court.*—Judgment affirmed, with one bill of costs to the respondents to be taxed against the plaintiff appellant.

ESCHWEILER, J., dissents.