## CASSIDY v. EVAN L. REED MFG. CO.

(District Court, E. D. Illinois. November 3, 1923.)

1. **Patents ☞129, 211(3)—License held admission by licensee of validity of patent.**

A contract of license to manufacture under a patent, though limited to manufacture at licensee's factory in a particular place, is effective as a negative covenant not to manufacture elsewhere, and an admission of the validity of the patent.

2. **Patents ☞328—1,064,289, for folding stool, held valid and infringed.**

The Cassidy patent, No. 1,064,289, for a folding stool, *held* not anticipated, valid and infringed.

In Equity. Suit by Alice A. Cassidy against the Evan L. Reed Manufacturing Company. Decree for complainant.

Gunn, Penwell & Lindley, of Danville, Ill., and Ralph Orwig, of Des Moines, Iowa, for plaintiff.

Rearick & Meeks, of Danville, Ill., and Walter N. Haskell, of Rock Island, Ill., for defendant.

LINDLEY, District Judge. Plaintiff, citizen and resident of the state of Iowa, owner of letters patent No. 1,064,289, issued June 10, 1913, on a folding stool, about May 1, 1918, entered into a contract with defendant, Evan L. Reed Manufacturing Company, an Illinois corporation, then doing business at Sterling, Ill., whereby plaintiff licensed said defendant to manufacture the said stools and to sell them throughout the United States, for payment of royalty as provided in said contract. The contract contains this express provision:

"The manufacture however, of such folding stools shall be limited to the factory of said licensee at Sterling, Illinois."

After the execution of said contract the defendant manufactured and sold stools, as licensed, and paid the royalty to plaintiff, until March, 1922, marking each of the stools manufactured as being licensed under the said patent, as required by the contract. Since March, 1922, no royalty has been paid. On May 25, 1922, the defendant wrote plaintiff that its woodworking factory had been destroyed by fire on March 24th, and that it had made no shipment of stools subsequently. Thereafter the defendant moved its plant to Danville, Ill., where it is now engaged in the manufacture of woodwork products. On April 9, 1923, defendant wrote plaintiff that it had ceased making stools. under the patent; that the stools then being manufactured did not conflict with the claims of the patent. Plaintiff brought the present suit for injunction and accounting, praying that the defendant might be enjoined from manufacturing or selling folding stools containing the invention of the said Cassidy patent.

Upon the hearing before the court, when the evidence was presented, considerable attention was given by counsel for both parties to the effect of the contract, plaintiff claiming that same created an estoppel against the defendant from denying the validity of the Cassidy patent, and that the contract covers the manufacturing of stools at Danville, in view of the fact that the plant was removed from Sterling to Danville.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

'The defendant contends that the contract has nothing to do with the operation at Danville, and that the relation of the parties is the same as if the contract had never existed.

[1, 2] The provisions above quoted from the contract indicate that the contract was to apply at Sterling only, but it is also manifestly the same as a negative covenant not to manufacture at any place other than at Sterling, and the manufacture and sale of the stools containing the invention of the Cassidy patent is undoubtedly a breach of the implied negative covenant, and the defendant, in view of this situation, if not estopped to deny the validity of the patent, has at least by its contract and implied covenants admitted the validity of the patent, which it has covenanted not to infringe at any place, and under which it has agreed to pay royalty for the manufacture at Sterling. Irrespective, however, of the question of estoppel, the court has examined the evidence in order to determine the validity of the patent, and whether or not same had been infringed by the action of defendant at its Danville plant.

Upon the question of validity, it is contended that the patent in issue was anticipated by the prior art of Young, 105,761, Knoeller, 433,795, Seaman, 604,482, Wagner, 440,730 and Schneider, 444,621, all issued prior to 1900. The record of the Patent Office, as disclosed by the contents of the file wrapper in Cassidy, 1,064,289, shows that the Examiner considered each of the said former patents, and three times rejected the application because of them, but upon final amendment allowed the application upon the claim as it now appears in the letters; the patent being purely one of combination of elements, none of which, taken separately, appears to be new. The claim as allowed consists of two component parts, the first of which is descriptive of the construction and reads as follows:

"A portable folding stepladder and stool, comprising a ladder member having two legs and a number of steps, a leg member having two legs connected by crosspieces, the tops of the ladder member being beveled or inclined, so that it will be in a horizontal position when the ladder member is inclined at the proper angle for forming a ladder, a combined seat, handle and lever hinged to the rear portion of the beveled or inclined top of the ladder member and a part of said combined seat, handle and lever being extended forwardly beyond the front of the ladder member and this forwardly projecting part being formed with a handle, the said leg member being hingedly connected to the bottom of the combined seat, handle, and lever near the rear thereof when the seat, handle, and lever is in a horizontal position, and two combined braces and levers pivoted at one end to the ladder member and extended downwardly and pivoted at the other end to the leg member"

The remainder of the claim, describing the operation, is as follows:

"Said parts being so arranged and proportioned that the lower ends of the ladder member may be placed on the floor and the upper end of the ladder may be used as a fulcrum and the front of the combined seat, handle, and lever may be grasped, and when moved downwardly it will serve as a lever to raise the leg member and move it rearwardly away from the ladder member, until the combined seat, handle, and lever rest flat upon the inclined beveled top of the ladder member, and when the forward end of the combined seat, handle, and lever is elevated the upper end of the leg member will be moved thereby downwardly and to position substantially parallel and adjacent to the ladder member, the said combined braces and levers being so arranged that, when the upper end of the leg member is moved upwardly and away from the ladder member, the said braces will serve as levers and cause the lower end of the

leg member to move away from the lower end of the ladder member, and when the said seat member is resting flat upon the top of the ladder member the said combined braces and levers will then serve as braces to prevent the lower ends of the ladder member and leg member from spreading."

Knoeller, 433,795, covered a folding chair and stepladder of rather complicated design, which for its operation demanded slats, detents, notches, pins, and various other structural component parts, in no way utilized by Cassidy, and neither its structure nor operation were identical with or mechanically equivalent to Cassidy, as defined in the claim as issued.

Seaman, 604,482, covered an ordinary stepladder, the novel feature of which lay in a connecting rod or pin which controlled the opening and closing of the ladder by moving up or down in a groove.

Wagner, 440,730, made no claim upon anything other than a folding cot, the head and foot pieces of which folded flat with a frame by simply turning on strapirons, underneath the frame.

Schneider, 444,621, combined cane and camp stool, manifestly anticipated no part of Cassidy's invention, unless it was the idea of using the seat also as a handle, which in itself probably would not constitute invention under any circumstances.

Young, in his folding counter stool, No. 105,761, included some of the elements involved in Cassidy's combination, viz.: Hinging the legs to the seat, so as to fold in the same direction and connecting the front and rear legs with pivoted or hinged braces. However, this stool, which was used merely as a counter stool, intended to fold close to the counter, is distinguished from the elements involved in Cassidy's combination, in that Cassidy substituted for a straight brace one so curved or bent as to permit of more compact folding, and in that the essential feature of Cassidy is the use of the seat as a lever in the opening and closing of the stool ladder. There is nothing in Young's description or claim to show that he ever conceived of so combining the various elements involved as either to cover the construction—i. e., combining mechanical and physical principles—or to produce the function performed by Cassidy's combination. The latter is clearly and specifically described and defined by the language of his claim as set forth supra. In Cassidy's claim it appears that the essential thing, in the result obtained, is so constructing her stool ladder that the same may be opened or closed with one hand, using the ladder or legs as fulcrums and the seat as a lever.

Young's description does not include such method of construction, and his claim includes no such result. It follows, therefore, that the examiner rightfully held that Cassidy's invention, as defined in her final amended claim, had not been anticipated by the prior art and was novel and patentable.

"Use of fire brick in arches and baffles in furnaces was very old. In adapting for use in the fireboxes of locomotives the devices that were known in connection with stationary boilers, the question in each instance was whether the adaptation came from the ordinary advance due to the mechanical skill of the practitioners of the art, or whether there was an additional advance that came from the creative imagination of one who was therefore entitled to rank as an inventor. Of course, all doubts should be resolved in favor of patentees,

and every shred of inventive progress should be protected." Universal Arch Co. v. American Arch Co. (C. C. A.) 290 Fed. 653.

Upon the question of infringement, it appears clearly from the exhibits and their demonstration that defendant's ladder stool, now being made, as well as that formerly made, involves the same principles of construction in the same combination as Cassidy's; that it performs in the same manner and with the same result as that defined in Cassidy's claim; and that plaintiff's and defendant's stools are mechanical equivalents. True it is that in some of the stools manufactured by defendant, after removal of its factory and ceasing to pay royalty to plaintiff, the part of the seat projecting over the front or ladder member is so reduced as to extend forward of the ladder member only one-fourth or one-half inch, and in still others, the ones now being manufactured, it has been further reduced, so as to be entirely flush with the said ladder member, while plaintiff's seat extends forward of or beyond the ladder member, both in design and the stool manufactured, some three or four inches. This is not a structural differentiation. It reduces the length of the lever, when the seat is used as a lever; that is, reduces the distance from the end of the lever to the fulcrum, thus reducing the leverage. But the stools operate in the same manner; the only difference being that, because of the shortened leverage in the defendant's stool, more energy is required to operate it. This is a difference of degree only, not of kind.

From the foregoing it is apparent that plaintiff is entitled to an injunction as prayed, and the same will issue, to include a restraint of defendant infringing by manufacturing such stools as those offered in evidence. Further, plaintiff is entitled to an accounting as prayed.