161 So. 321

## LANCASTER v. TRI–STATE TRANSIT CO. OF LOUISIANA, Inc., et al.

No. 33868.

April 1, 1935.

Rehearing Denied April 29, 1935.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Foster, Hall, Barret & Smith, of Shreveport, for appellee Tri-State Transit Co.

Dickson & Denny, of Shreveport, for appellee Johnson.

A. M. Pyburn, of Shreveport, amicus curiæ.

LAND, Justice.

The Caddo Transfer & Warehouse Company, Inc., with its principal office in the city of Shreveport, La., was engaged in the carriage of passengers and freight in local, intrastate, and interstate business.

This company was chartered June 3, 1914, W. H. Johnson, one of the defendants in this suit, being the principal stockholder and president.

On March 1, 1928, the Caddo Transfer & Warehouse Company, Inc., organized the Tri-State Transit Company of Louisiana, Inc., to carry on its passenger or "bus business,"

transferring to the new corporation all of the assets with which it was to begin business, and receiving in exchange certain shares of preferred and common stock of the Tri-State Transit Company of Louisiana, Inc.

On March 9, 1930, the Caddo Transfer & Warehouse Company, Inc., was placed in receivership, W. H. Johnson being named as receiver.

On September 26, 1932, W. H. Johnson was removed as receiver, for failure to render an account of his gestion, and L. T. Lancaster was appointed receiver in his stead, with full and complete power to carry on the business of the corporation as a going concern.

Plaintiff alleges that, from the time the Tri-State Transit Company of Louisiana, Inc., was organized until the appointment of a receiver of the Caddo Transfer & Warehouse Company, Inc., both corporations were operated by the defendant Johnson as president and general manager; that he practically owned both of the corporations; and that, after the organization of the Tri-State Transit Company of Louisiana, Inc., the defendant Johnson conceived a scheme to acquire for himself, and without payment therefor, the stock of the Tri-State Transit Company of Louisiana, Inc., which was held by the Caddo Transfer & Warehouse Company, Inc.

Plaintiff then sets forth the various steps taken by Johnson to accomplish his alleged design, and prays for judgment against the Tri-State Transit Company of Louisiana, Inc., and W. H. Johnson, individually, in solido, decreeing the Caddo Transfer & Warehouse Company, Inc., to be the owner of all of the capital stock of the Tri-State Transit Company of Louisiana, Inc., from its organization to the present time.

The case was tried by jury, which returned a verdict in favor of defendants; and from the judgment rendered upon this verdict, rejecting the demands of the receiver of the Caddo Transfer & Warehouse Company, Inc., an appeal has been taken to this court.

■ (1) The main issue in this case is: Did the Caddo Transfer & Warehouse Company, Inc., originally subscribe for and pay for all of the stock of the Tri-State Transit Company of Louisiana, Inc.?

For sake of brevity, we shall hereafter in this opinion refer to the former corporation as the Caddo, and to the latter corporation as the Tri-State.

None of this stock has ever been delivered to plaintiff, receiver of the Caddo, amicable demand upon the defendants for the return of the stock having been made in vain.

The various steps taken and transactions had by and between Johnson and the Caddo, on the one hand, and the Caddo and the Tri-State, on the other, by which the Caddo was apparently divested of all of its stock, are alleged by plaintiff to be parts of a fraudulent scheme conceived by Johnson and executed by him and his subordinates, for the purpose of taking away the Tri-State from the Caddo and surrendering it to Johnson.

That the Tri-State was carved bodily out of the assets of the Caddo is not open to dispute. The defendant Johnson in his testimony admits that he practically owned and managed both corporations.

On March 1, 1928, the board of directors of the Caddo adopted the following resolu-

tion: "Be it resolved that whereas *this corporation is the owner of the Tri-State Transit Company, which is its bus division,* and whereas it is to the benefit of this corporation to separately incorporate its bus lines:

"Now, therefore, be it resolved that W. H. Johnson, President of this corporation (the Caddo), be and he is hereby authorized to employ counsel and to organize a corporation to be known as the Tri-State Transit Company of Louisiana, Inc., with *15,000 shares* of no par value stock and *2,500 shares* of preferred stock with a par value of One Hundred & no/100 ($100.00) Dollars per share, which stock shall bear seven per cent per annum accumulative dividends; *further that he be authorized to transfer to said corporation all of the assets of the Tri-State Transit Company and receive in exchange therefor 1,252 shares of said preferred stock and 13,748 shares of said common stock of no par value.*" Tr., p. 86. (Italics ours.)

The same day that this resolution was adopted by the board of directors of the Caddo, March 1, 1928, the Caddo transferred by notarial act to the Tri-State *"all of and singular of the assets of the Tri-State Transit Company, being the bus division* of the Caddo Transfer & Warehouse Co., Inc., vendor herein." (Italics ours.)

It is stated in this notarial act of transfer or sale that: *"The consideration* of this sale is *1,252 shares* of the preferred stock and *13,748 shares* of the common stock, of no par value, of the said Tri-State Transit Company of Louisiana, Inc., *the receipt of which is hereby acknowledged;* and the assumption of all liability of the said Tri-State Transit Company, in amount of Seventy-five Thousand, Ninety-two and no/100 ($75,092.00) Dollars, *by the vendee* herein." (Italics ours.)

The articles of incorporation of the Tri-State were duly subscribed by the incorporators on March 1, 1928, with W. H. Johnson, president; E. H. Crain, vice president; C. E. Beard, secretary; and R. F. Hemperley, treasurer. Tr., p. 82, Art. IV.

The charter of the Tri-State is signed by the above incorporators, and by the Caddo Transfer & Warehouse Co., Inc., W. H. Johnson, president. Tr., p. 83.

Article VII of the charter of the Tri-State reads as follows: "The incorporators and subscribers to these articles of incorporation, * * * and the number of shares subscribed by them, are as follows: *Caddo Transfer & Warehouse Company, Inc.,* Shreveport, Louisiana, *1,252 shares* of preferred stock, *13,748 shares* of common stock; *W. H. Johnson,* Shreveport, Louisiana, *1 share of common stock;* E. H. Crain, Shreveport, Louisiana, 1 share of common stock; C. E. Beard, Shreveport, Louisiana, 1 share of common stock; R. F. Hemperley, Shreveport, Louisiana, 1 share of common stock." Tr., p. 83. (Italics ours.) None of the stock of the individual incorporators had been paid for.

On March 1, 1928, *Johnson,* Crain, Beard and Hemperley, the incorporators of the Tri-State, made an affidavit before a notary: "That *the assets* of the Tri-State Transit Company of Louisiana, Inc., taken in by said corporation *for stock has a net worth* of One Hundred Thirty-three Thousand, Two Hundred Seventy-nine & 73/100 ($133,279.73) Dollars; that said net worth is of *sufficient value* to exchange therefor *1,252 shares* of its preferred stock and *13,748 shares* of common

stock of said corporation; that a copy of the statements of said assets is attached to this *affidavit of appraisal and made part hereof.*" Tr., p. 84. (Italics ours.)

Then follows a copy of the statements of the assets on page 85 of the transcript, showing total assets of $208,371.73, less liabilities of $75,092, *or capital stock in the sum of $133,279.73.*

Notwithstanding the fact that the charter of the Tri-State declares that the Caddo had subscribed to 1,252 shares of the preferred stock and 13,748 shares of the common stock of the Tri-State, *and Johnson had subscribed to 1 share of the common stock;* notwithstanding the fact that the resolution of the board of directors of the Caddo had authorized Johnson, its president, to organize the Tri-State corporation, and "to transfer to said corporation *all of the assets* of the Tri-State Transit Company and *receive in exchange therefor 1,252 shares of said preferred stock and 13,748 shares of said common stock of no par value*"; and notwithstanding the fact that, in the act of transfer of the assets from the Caddo to the Tri-State, it is stated that "the consideration of this sale is *1,252 shares of the preferred stock and 13,748 shares of the common stock of the Tri-State, the receipt of which is hereby acknowledged.*" Johnson and the Tri-State, in their answers, while admitting that all of the individuals who took part in the incorporation of the Tri-State were officers or employees of the Caddo, *deny that the stock was issued as set forth in the charter of the Tri-State,* and aver that of the *1,252 shares* of preferred stock which the charter recites were subscribed for and paid for by the Caddo, *only*

*682 shares* were issued to the Caddo, *the remaining 570 shares being issued to Johnson,* "in payment to him *of services rendered in organizing and promoting* the Corporation (the Tri-State) and to pay him *for liabilities assumed by him owed by said Company* (the Tri-State)." Tr., p. 36. (Italics ours.)

The incorporation of the Tri-State was nothing but the incorporation of "the bus division" of the Caddo, a going and established business, that needed no promotion, and which was already equipped with the assets of the Caddo, which were transferred to it as a corporation, as a mere act of formality. Besides, the Caddo, in the act of transfer of its assets to the Tri-State, assumed "*all liability of the said Tri-State Transit Company* in amount of $75,092.00." (Italics ours.)

██ The flimsiness of such contention by the defendants was so apparent that, after the trial got under way, they offered testimony, over the strenuous objections of plaintiff, to show that Johnson got his 570 shares of stock *for services rendered by him to the Caddo,* and in payment of money which *the Caddo owed him.*

Manifestly, the objection of plaintiff should have been sustained, and the defendants held to their pleadings.

Defendants attempt to explain the disappearance of the remaining 682 shares of preferred stock owned by the Caddo by the contention that, within a short time after the Tri-State was organized, March 1, 1928, the Caddo got into debt to it in a sum approximating $70,000, and the stock was canceled out on June 30, 1928, to pay the debt. This contention is made in face of the fact that on

March 1, 1928, when the Tri-State was incorporated, the Caddo had assumed *all the liability* of the Tri-State in an amount of $75,092.

According to the defendants, the common stock which was once the property of the Caddo, was pledged by Johnson for his personal debts, under a resolution of the board of directors of the Caddo, of date *November 22, 1929,* authorizing the pledge, because "the said W. H. Johnson had guaranteed certain obligations and endorsed the paper of the corporation, and by virtue of same had been financially hurt and embarrassed and had also advanced to them large sums of money which had not been paid back to him and were in arrears to the said W. H. Johnson, in a large sum of money for rent of one of the buildings occupied by the Caddo Transfer and Warehouse Company, Inc." Answer of Johnson, Tr., p. 40.

It is further averred that all of the pledgees have surrendered such stock and have caused the certificates to be canceled and new certificates issued to them in their place. Answer of Johnson, Tr., p. 41.

If these contentions of defendants be correct, then *by June, 1928,* the Caddo had lost all of its holdings of Tri-State preferred stock, valued at more than $125,000, and, *in the following year, 1929,* it lost all of its holdings of Tri-State common stock, through the pledge which Johnson made to secure his personal debts.

We are not impressed by these contentions of defendants. When Johnson was appointed receiver of the Caddo *in 1930, a year later,* he caused an inventory to be made of its property. This inventory is of date *March 31, 1930,* and the stock is listed in it as "*Stock—Tri-State Transit Company * * * $50,825.85.*" Because of the destruction of the records, it cannot be ascertained how much of the inventoried stock was preferred and how much common.

Johnson was removed as receiver of the Caddo, because of his failure to render an account of the receivership. Before his removal, R. H. Frost, public accountant, was appointed by the court to examine and report on the records of the Caddo receivership, and his testimony is to the effect that the receivership books contained no entries indicating that the Caddo had parted with the ownership of the Tri-State stock and that the books showed that, at the time of Johnson's removal, the stock was still owned by the Caddo and was carried as one of its principal assets. Tr., p. 137.

Only a part of the receivership books could be found by Mr. Frost, the public accountant. The rest had disappeared (Frost, Tr., p. 136), and all of the original vouchers from which the book entries had been made were likewise missing. All of the books and records of the corporation prior to the receivership also were gone. They are still gone, although there is a large fireproof vault in the building occupied by the Caddo in which they might have been safely stored.

Disappearance of the books and failure of Johnson to file an account of his gestion led to his removal as receiver by the district court. By an appeal to this court, however, General Motors Truck Co. v. Caddo Transfer & Warehouse Co., 176 La. 181, 145 So. 372, Johnson held on to the receivership until December, 1932; and it was then that the new

receiver caused a minute but unsuccessful search to be made for these books and records.

In some of these books there should have been inscribed the entries covering transactions between March 1, 1928, and June 30, 1928, when the Caddo's 682 shares of Tri-State preferred stock are supposed to have been "redeemed," and there should also be in the same books the entire account of Johnson with the Caddo, which would show both what he took in cash from the corporation and what he paid back to it.

The minute book of the Caddo has disappeared, but what are stated to be *the original minutes of meetings of the Board of Directors*, authorizing Johnson to use the Caddo's Tri-State common stock for his own purposes, and take unto himself 570 shares of the preferred stock and to cancel what he did not need to use, were miraculously preserved from the general destruction of books, checks, invoices, accounts, and other records and vouchers.

One would think that the account between the Caddo and the Tri-State could be traced through the books and records of the Tri-State, since those of the Caddo are not available; but when plaintiff called for these by subpoena duces tecum, the answer was that *they also have disappeared.* And surely Johnson's personal books which he must have kept for income tax returns at least would show the Caddo's account with him, *but Johnson states that he had no such books.*

■■ However, the ultimate fact remains that, *in the inventory of the assets of the Caddo of date March 31, 1930, made by Johnson as receiver*, and duly homologated and approved by the court, the stock of the Tri-State owned by the Caddo is listed and appraised at $50,825.85. This stock was in custodia legis, and could not have been disposed of by Johnson, as receiver, without an order of the court. Nor could any of this stock have been transferred to Johnson, nor could he have legally and validly pledged this stock for the payment of his individual debts, under any resolution which the board of directors of the Caddo may have adopted.

This stock was inventoried by Johnson in such a way that it is not possible for this court to determine what part of it is preferred stock, or what part of it is common stock, the stock having been listed by Johnson, as receiver of the Caddo, merely as "Stock—Tri-State Transit Company * * * $50,825.85."

Nor is it possible for this court to value the stock separately, either as preferred or common stock. For this reason, also, we are unable to trace this stock into the hands of third persons, or to determine the intervening equities of the case, if such may exist.

Be that as it may, these stocks were listed by Johnson, as receiver, as a part of the assets of the Caddo, and none of these stocks has been accounted for to plaintiff, the present receiver of the Caddo, by either of these defendants, the Tri-State or Johnson. The value of the stock as inventoried must therefore be taken as its true value, in the accounting demanded of defendants in the present suit.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that there be judgment in favor of the Caddo Transfer & Warehouse

Company, Inc., herein represented by L. T. Lancaster, receiver, in the sum of $50,825.85, with legal interest from judicial demand until paid, against the Tri-State Transit Company of Louisiana, Inc., and against W. H. Johnson, individually, in solido, and that defendants pay all costs.

## On Application for Rehearing.

PER CURIAM.

On application for rehearing, counsel have called our attention to an erroneous statement in the opinion that the Caddo Transfer & Warehouse Co., Inc., had assumed the debts of the Tri-State Transit Company. The error is patent because elsewhere in the opinion the language of the act transferring the assets of the Tri-State Transit Company, which were owned entirely by the Caddo Transfer & Warehouse Company, to the Tri-State Transit Company of Louisiana, Inc., is quoted literally, the last clause of which is as follows: "and the assumption of all liability of the Tri-State Transit Company, in amount of Seventy-five Thousand Ninety-two and no/100 ($75,092.00) Dollars, by the vendee herein." The words "by the vendee herein" are italicized.

Counsel for defendants seem to think the court's ultimate conclusion was influenced by its erroneous finding that the Caddo Transfer & Warehouse Company had assumed these debts. Counsel are in error. The basis of our conclusion, as stated at page 195 of 182 La., at page 324 of 161 So. was our finding as a fact that "in the inventory of the assets of the Caddo of date March 31, 1930, made by Johnson as receiver, and duly homologated

and approved by the court, the stock of the Tri-State owned by the Caddo is listed and appraised at $50,825.85. This stock was in custodia legis, and could not have been disposed of by Johnson, as receiver, without an order of the court. Nor could any of this stock have been transferred to Johnson, nor could he have legally and validly pledged this stock for the payment of his individual debts, under any resolution which the Board of Directors of the Caddo may have adopted."

Rehearing refused.