**167 So. 435**

**LANCASTER v. JOHNSON et al.**

**No. 33570.**

March 2, 1936.

Rehearing Denied March 30, 1936.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellant.

Dickson & Denny and Foster, Hall, Barret & Smith, all of Shreveport, for appellees.

HIGGINS, Justice.

This is a suit by a receiver against his predecessor and the surety on his bond, in solido, to recover the sum of $10,000, the full amount of the bond, on the ground of alleged shortage, and for attorney's fees, as provided by Act No. 225 of 1918.

The defendants, in their answers, admit Mr. Johnson's appointment as receiver of the corporation, the giving of the bond, his serving as receiver, his removal as receiver, and the appointment of Mr. Lancaster as his successor. They deny the correctness of the report of the auditor appointed by the district judge, and aver that "during his administration as receiver, he filed statements showing accurately the condition of the business conducted by him, as provided by law." They further aver that all amounts received by Mr. Johnson, as receiver, were disbursed in the receivership business, or delivered to the plaintiff.

The case was tried before a jury, resulting in a verdict in favor of the defendant, and the plaintiff has appealed.

After Mr. Johnson's appointment as receiver of the Caddo Transfer & Warehouse Company on March 9, 1930, an inventory of its property was taken, showing an appraised value of $240,490.90. On September 26, 1932, Mr. Johnson was re-

moved as receiver, for failure to render an account of his gestion, in accordance with the district judge's order, rendered on July 13, 1932, and the plaintiff was appointed in his stead. A new inventory was immediately taken of the property delivered by the old receiver to the new one, the total appraised value of which was $29,150.

Mr. Johnson did not deliver all of the books and records of the corporation to his successor. His explanation of why he did not do so is that they were lost or destroyed.

The bank's records show that between March 7, 1930, and December 14, 1932 (Johnson's administration having been continued from September 26, 1932, to December 14, 1932, under a stay order), he collected more than $540,000 and used or disbursed the same during his tenure in office as receiver.

Mr. R. H. Frost, an expert accountant, was appointed by the district judge, ex proprio motu, to examine the accounts of Mr. Johnson before he was removed as receiver. From the entries in the general ledger, which was kept by Mr. Johnson, or under his supervision of the receivership business, there appears a cash shortage of $31,839.04, after allowing Johnson credit for all unauthorized expenditures. Mr. Frost explained that he did not have vouchers, checks, receipts, and other records to verify the entries in the general ledger, but, if these entries were accurate and correct, the net cash unaccounted for was the sum above stated. Mr. R. J.

Hughes, who examined Mr. Frost's work, corroborated his testimony.

Mr. Lancaster and Mr. Frost both stated that they made a most thorough search for the other books and records of the company at the corporation's place of business and made inquiry among its employees, but were unable to locate these books and records, although there was an adequate fire proof vault (ten by fifteen feet) in the building, provided for the purpose of keeping valuable books, papers, and records. They further state that Johnson, at first, asked for additional time in which to deliver the records and books, but later said they were lost or destroyed.

In order to rebut the testimony of the plaintiff's witnesses, defendants offered Mr. R. F. Hemperly, who was the auditor of the corporation during Mr. Johnson's administration and who is presently employed by another company of which Mr. Johnson is president. He testified that he kept, for his personal records, what purported to be a résumé of the cash receipts and disbursements of the receivership for each month during the time that Mr. Johnson was serving as receiver. He stated that he had a special file in which he kept this information in connection with certain income tax matters, and that when he left the company, he took these records with him.

Based upon the pencil memorandum of Mr. Hemperly, Mr. Ralph Eglin, as accountant, testified that, if the information contained therein was accurate, there was no cash shortage by Mr. Johnson in his account. On cross-examination, he admitted that, if the entries in the general ledger were correct, he would probably arrive at the same figure as Mr. Frost did, in making his examination and report. He explained that he would call it 'a discrepancy which could not be accounted for, because of the incomplete records. He also stated that if he had to report on the general ledger kept by Mr. Johnson, or the statements in the accounts filed in court by him, he would qualify his report by showing that, on account of the absence of records, he was unable to verify those figures. He said that it was the uniform practice of large corporations to preserve evidence of what they pay for labor and salaries for at least a year. He admitted that, without the pencil memorandum, it would not have been possible for him to show anything more than the amount of money deposited in the bank, which is shown upon the ledger, and that the ledger should properly reflect the amount of money taken out of the bank. The variation between Mr. Frost's report, and Mr. Eglin's report is due to the difference in the basis of the two reports. Mr. Frost based his findings upon the books and verified judicial reports of Mr. Johnson, as receiver. Mr. Eglin predicated his findings upon the pencil memorandum produced at the trial by Mr. Hemperly, who had heretofore denied that he had in his possession any books, records, documents, or accounts of the corporation, other than those delivered to Mr. Frost under the order of court. If Mr. Hemperly knew that he had this valuable evidence in his possession, it is most unusual that

he and Mr. Johnson did not produce it at the time the proceedings to remove Mr. Johnson as receiver were brought against him. If the information contained in that purported statement was accurate, it would have exculpated Mr. Johnson from any wrongdoing. It would seem to us that the receiver, who comes into court and makes a sworn statement of his receipts and disbursements, will not be permitted thereafter, when on the basis of these sworn statements he is shown to have failed to account for a large part of the cash that he received, to then say that the statements are wrong and that his bookkeeper has a pencil memorandum of receipts and disbursements which the bookkeeper has kept for his own information, and which should be substituted for the receiver's periodical or quarterly statement as the basis for determining what the receiver owes the receivership. We further note that no attempt has been made to explain the discrepancies between the verified accounts filed in court by Mr. Johnson and the private pencil memorandum of his bookkeeper, nor does Mr. Hemperly offer a satisfactory explanation of why it was necessary to keep such a memorandum, when the books themselves were readily accessible to him and the trial balance taken under his supervision each month, would have fully revealed the same information.

In addition to the cash shortage, Mr. Johnson, as receiver, has also failed to account for, or deliver to his successor, a considerable amount of movable property which was included in his inventory, for instance, garage and automobile equipment

valued at $9,730.26, automobile parts appraised at $5,781.20, and assets consisting of stock in the Tri-State Transit Company of Louisiana, Inc., amounting to $50,825.-85. In other words, although the cash, the movable property, and the stock were unquestionably placed in the possession and control of Mr. Johnson as receiver, he makes no reasonable or satisfactory explanation of what disposition he made of these assets, and resorts to the strategy of defying the plaintiff, the new receiver, to show what became of them, as the books and records of the company were destroyed or lost.

The law is clear that it was his manifest duty to keep accurate and regular accounts of all moneys, property, and assets coming into his possession as receiver of the corporation. His failure and refusal to file a proper and accurate account, together with the mysterious disappearance of the books and records of the company, and his own admitted negligence and carelessness in attempting to preserve them, raises strong presumption against him. High on Receivers (4th Ed.) 941; Clark on Law of Receivers, vol. 1, par. 544; Fletcher Cyc. Corporations, Permanent Edition, vol. 16, par. 7874; Act No. 159 of 1898, § 9, Dart's La. General Statutes, § 1217.

Under the facts as shown here, it has been held that a trustee, who fails to keep an honest and accurate account of his transactions, will not be granted immunity from responsibility of accounting for the property intrusted to him by pleading ignorance and inability to account, because

of the loss or destruction, whether willful or negligent, of the very records which it was his duty to keep and preserve. Red Bud Realty Co. v. South et al., 96 Ark. 281, 131 S.W. 340, 347; Dunn v. Acme Auto & Garage Co., 168 Wis. 128, 169 N. W. 297, 298; Conrads v. Kasch (Tex.Civ. App.) 26 S.W.(2d) 732, 735; Ithell v. Malone (Sup.) 154 N.Y.S. 275; Smith v. Moore (C.C.A.) 199 F. 689, 697; Bone v. Hayes, 154 Cal. 759, 99 P. 172, 175; White v. Rankin, 18 App.Div. 293, 46 N. Y.S. 228; Backus v. Finkelstein (D.C.) 23 F.(2d) 357.

■There is other testimony in the record tending to show that Johnson did not personally handle all of the cash and that he was the majority stockholder of the corporation, but, it is our opinion that this evidence is insufficient to overcome the evidence offered by the plaintiff.

In concluding that the evidence shows a shortage in excess of the amount of the bond, we may say that the character of the defense and testimony is similar to that presented when this case was here before (Lancaster v. Tri-State Transit Co. of La., 182 La. 185, 161 So. 321), and at which time we reversed the verdict of the jury and held that the stock belonged to the corporation in receivership. See, also, General Motors Truck Co. v. Caddo Transfer & W. Co., 177 La. 926, 149 So. 524; Id., 176 La. 181, 145 So. 372.

It is shown that Mr. Johnson is insolvent and a return nulla bona has been made, and plaintiff does not seek judgment

against him in excess of the $10,000 here claimed against the defendants, in solido.

The relevant provision of the bond reads as follows:

"The condition of this obligation is such, that if the above bounden W. H. Johnson, Receiver for Caddo Transfer & Warehouse Company, Inc., in receivership, does well and truly according to law, administer and liquidate the affairs of the same and further does make and render a true, just and perfect account of his actions and doings, when thereunto lawfully required agreeable to law, this obligation to be void, or else to remain in full force and virtue."

■Having concluded that there was a shortage by Mr. Johnson in his capacity as receiver, it is clear that his surety is liable in solido with him to the full extent of the bond.

■Plaintiff has also shown that he has fully complied with Act No. 225 of 1918, and is entitled to the benefits of its provisions.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from are annulled and set aside, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of L. T. Lancaster, receiver of Caddo Transfer & Warehouse Company, plaintiff, and against the defendants, W. H. Johnson and Fidelity & Deposit Company of Maryland, in solido, in the full sum of $10,000, with legal interest from judicial demand, until paid, and 10 per

cent. on the full amount of principal and interest, as attorney's fees, and for all costs of this suit.